KULTURA, INC., Plaintiff–Appellant,

v.

SOUTHERN LEASING CORPORATION,
Defendant–Appellee.

Supreme Court of Tennessee,
at Knoxville.

March 25, 1996.

Douglas L. Dutton, Hodges, Doughty and Carson, Knoxville, for Plaintiff–Appellant.

Frederick L. Conrad, Jr. and Andrew L. Colocotronis, Ambrose, Wilson, Grimm and Durand, Knoxville, for Defendant–Appellee.

### *OPINION*

REID, Justice.

This case presents for decision the liability of a "UCC–1" filer who fails to timely file a termination statement. The plaintiff, Kultura, Inc., asserts that pursuant to Tenn.Code Ann. § 47–9–404(1) (1992), it is entitled to damages for the loss of the sale of its business and attorney's fees, and the statutory penalty of $100.00, as the result of the defendant's, Southern Leasing Corporation's, failure to file a termination statement under Tennessee's Uniform Commercial Code. The trial court found that Southern Leasing had failed to file the termination statement as required by Section 47–9–404(1) but limited Kultura's damages to the $100.00 statutory penalty. The Court of Appeals held that because the financing statement covered a lease, rather than a security agreement, Section 47–9–404(1) was not applicable and dismissed Kultura's suit. This Court concludes that the decision of the Court of Appeals must be reversed and the judgment of the trial court affirmed.

### I.

Kultura owned and operated several frozen yogurt shops, known as "Zack's Famous Frozen Yogurt." In 1987, Kultura entered into certain agreements with Southern Leasing regarding restaurant equipment which it used in its shops. This case involves a lease agreement dated August 7, 1987, concerning equipment located in Kultura's business at the Hamilton Place Mall in Chattanooga. The parties also agreed that Kultura could purchase the equipment for the additional payment of 10 percent of the original cost price. On September 14, 1987, Southern Leasing filed a financing statement in the Tennessee Secretary of State's Office covering that equipment pursuant to Tenn.Code Ann. § 47–9–408 (1992). The UCC–1 stated on its face "True Lease—No security interest."

Kultura completed the lease payments and, on December 20, 1991, purchased the equipment for the agreed amount of $3,670.18.

In early 1992, Kultura began discussing the sale of the Hamilton Place business to Jay Wiston. The parties tentatively agreed upon a purchase price of $70,000.00 for the equipment and Kultura's premises lease. The terms of the agreement required that Kultura deliver clear title to the equipment at the closing. When a title search disclosed the financing statement on the equipment, Wiston refused to execute the purchase agreement until the property was cleared of the incumbrance.

On April 1, 1992, Kultura's attorney sent a letter to Southern Leasing advising that Kultura was selling the property and requesting that it release two financing statements, including the financing statement covering the equipment which is the subject of this suit. The attorneys for the parties discussed by telephone on April 14, 1992, Kultura's request that the financing statement be released. By letter dated May 1, 1992, to Southern Leasing's attorney, Kultura's attorney emphasized the urgent need for a termination statement for the Hamilton Place equipment and demanded compliance with the provisions of Section 47–9–404(1). On May 19, 1992, Kultura's attorney sent a third letter advising Southern Leasing's attorney of the prospective sale. The letter included the following:

Please be advised that if we do not receive the termination statement immediately, my client will be in danger of losing this sale. In addition to the statutory penalty as set out in T.C.A. § 47–9–404, we will also hold your client responsible for any losses sustained if my client's sale falls through. We are unaware of any justification for your client's continued refusal to execute and deliver the required termination statement.

On June 4, 1992, Kultura filed a complaint for declaratory judgment and damages. On August 19, 1992, before the suit had proceeded further, Southern Leasing, without notifying Kultura, mailed a termination statement to the Secretary of State's office. On September 11, 1992, Kultura received a copy of a termination statement which had been filed on August 25, 1992. Kultura promptly notified Wiston that the financing statement had been terminated and that it was ready to consummate the sale, but Wiston responded that he was no longer interested in buying the Hamilton Place business.

By order entered October 5, 1992, the trial court found that because Southern Leasing had filed the termination statement, the only issue remaining was Kultura's claim for damages. At the initial hearing on damages, the trial court ruled that not only had Southern Leasing violated Section 47–9–404(1), but it also was guilty of tortious interference with a prospective contractual relationship. The trial court first held that Kultura had sustained damages in the amount of $45,000.00 due to the loss of sale. However, the court, not being satisfied with the assessment of damages, allowed the parties to present additional proof on that issue. On the subsequent hearing, the court concluded that Kultura had failed to prove any damages. In rejecting Kultura's claim for damages, except for the statutory penalty under Section 47–9–404(1), the trial court found that the business still was worth as much as the prospective purchaser had offered to pay for it. The trial court also declined to award attorney's fees under Section 47–9–404(1). Accordingly, Kultura was awarded a judgment in the amount of the statutory penalty for failing to file a termination statement—$100.00.

Based on its conclusion that Section 47–9–404(1) did not apply, the Court of Appeals reversed the award of the $100.00 statutory penalty and, otherwise, affirmed the judgment of the trial court.

## II.

■ The first issue is whether Southern Leasing was required to file a termination statement. Tenn.Code Ann. § 47–9–404(1) provides in pertinent part:

If a financing statement covering consumer goods is filed ..., then within one (1) month or within ten (10) days following written demand by the debtor after there is no outstanding secured obligation and no commitment to make advances, incur obligations or otherwise give value, the secured party must, unless the filing lapses during such period, file with each filing officer with whom the financing statement was filed, a termination statement to the effect that he no longer claims a security interest under the financing statement, which shall be identified by file number. In other cases whenever there is no outstanding secured obligation and no commitment to make advances, incur obligations or otherwise give value, the secured party must on written demand by the debtor send the debtor, for each filing officer with whom the financing statement was filed, a termination statement to the effect that he no longer claims a security interest under the financing statement, which shall be identified by file number ... If the affected secured party fails to file such a termination statement ... within ten (10) days after proper demand therefor he shall be liable to the debtor for one hundred dollars ($100), and in addition for any loss caused to the debtor by such failure.

The financing statement at issue in this case was filed with the Secretary of State's office pursuant to Tenn.Code Ann. § 47–9–408, which provides:

A consignor or lessor of goods may file a financing statement using the terms "consignor," "consignee," "lessor," "lessee" or the like instead of the terms specified in § 47–9–402. The provisions of this part shall apply as appropriate to such a financing statement but its filing shall not of itself be a factor in determining whether or not the consignment or lease is intended as security (§ 47–1–201(37)). However, if it is determined for other reasons that the consignment· or lease is so intended, a security interest of the consignor or lessor which attaches to the consigned or leased goods is perfected by such filing.

■ This provision of the Uniform Commercial Code authorizes the filing of a financing statement by a party whose interest in the described property is that of a consignor or a lessor, whether or not a security interest is retained. The filing of a financing statement does not change the legal relationship between the parties. In the Comments to the Official Text for Section 47–9–408, it is recognized that a "lessor may choose to file for safety even while contending that the lease is a true lease for which no filing is required." The Comments further state that "[i]f the lease is a true lease, none of the provisions of the Article [Chapter] is applicable to the lease *as an interest in the chattel.*" (Emphasis added.) Thus, if the lease is a true lease, questions involving the lessor's interest in the property—such as priority— are not governed by Article 9 of the Uniform Commercial Code. This does not mean, however, that the lessor who files "for safety" under Section 47–9–408 can take advantage of this provision and ignore other provisions of Article 9 pertaining to filing.

Once a party chooses to use the Uniform Commercial Code to protect itself by filing a financing statement under Section 47–9–408, it is bound by the terms of Section 47–9–404(1) to release the financing statement within the specified period of time after proper demand, even if the transaction in question was intended to create a "true lease." This holding is supported by language in Section 47–9–408 stating that "[t]he provisions of this part [Part 4—Filing] shall apply as appropriate to such a financing statement." This Court agrees with the conclusion of the trial court that once a financing statement has been filed, for whatever purpose, it is "appropriate" for the provisions of Section 47–9–404(1) to apply. Since the character of the transaction is not determinative for purposes of Section 47–9–404(1), it is not necessary to decide whether a security interest in the property was retained in the instrument filed.

The record fully supports the holding of the trial court that Southern Leasing's failure to file the termination statement was a violation of Section 47–9–404(1). Accordingly, the trial court's judgment of the $100.00 statutory penalty is affirmed.

■ The next issue is whether Kultura is entitled to damages in addition to the statutory penalty. Under Section 47–9–404(1), Southern Leasing is obligated to pay damages for "any loss" caused to Kultura by Southern Leasing's failure to file a termination statement. Kultura asserts that "any loss" includes profit lost from the sale of its business and attorney's fees.

■ The Court's role in construing statutes is to "ascertain and carry out the legislative intent without unduly restricting or expanding the statute's coverage beyond its intended scope." *State v. Sliger,* 846 S.W.2d 262, 263 (Tenn.1993). Whenever possible, legislative intent should be determined from the plain language of the statute, "read in the context of the entire statute, without any forced or subtle construction which would extend or limit its meaning." *National Gas Distributors, Inc. v. State,* 804 S.W.2d 66, 67 (Tenn.1991).

■ "Any loss" is not defined in the Code, and the few cases from other jurisdictions addressing Section 9–404(1) of the UCC provide little guidance. "Any loss" could be construed broadly to include lost profits. A broad construction is supported by the statement in Tenn.Code Ann. § 47–1–106(1) (1992) that "[t]he remedies provided by chapters 1–9 of this title shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed." However, Section 47–1–106(1) also mandates that "neither consequential or special nor penal damages may be had except as specifically provided in chapters 1–9 of this title or by other rule of law."[1] Since Section 47–9–404(1) does not specifically provide for consequential or special damages, there can be no award for damages for lost profits unless authorized by other rule of law.

---

1. The Code authorizes consequential damages in Sections 47–2–714(3) and 47–2–715(2) (1992). Lost profits are allowable as consequential damages under these sections. *First Tennessee Bank Nat'l Ass'n v. Hurd Lock & Mfg. Co.,* 816 S.W.2d 38, 42–43 (Tenn.Ct.App.1991).

 An aggrieved party under Section 47–9–404(1) is not limited to the statutory penalty for failure to file a termination statement when another rule of law provides a greater remedy. *See e.g., Tyler v. Eastern Discount Corp.,* 55 Misc.2d 1002, 286 N.Y.S.2d 948, 952 (N.Y.1968). In this case, Kultura contended, and the trial court initially agreed, that Southern Leasing's failure to file the termination statement also constituted the tort of intentional interference with prospective economic advantage. However, intentional interference with prospective economic advantage has not been recognized as a cause of action in this state. *Quality Auto Parts v. Bluff City Buick,* 876 S.W.2d 818, 823 (Tenn. 1994). And, furthermore, after the second hearing on damages, the trial court found that Kultura had failed to prove any damages. The evidence does not preponderate against that finding.[2] Thus, there is no proof of loss under any other rule of law. Consequently, the judgment that Kultura is not entitled to damages for the loss of the sale of its business is affirmed.

 The final issue concerns attorney's fees. Generally, attorney's fees are not recoverable in the absence of a statute or contract specifically providing for such recovery. *Pullman Standard, Inc. v. Abex Corp.,* 693 S.W.2d 336, 338 (Tenn.1985). There appears to be no decision addressing whether under UCC Section 9–404(1) "any loss" includes attorney's fees. The term "any loss" is also used in UCC Section 2–715(2)(a), regarding what is included in a buyer's consequential damages resulting from a seller's breach. Although this section also is written broadly as to include "any loss," courts consistently have held that the Code makes no change in the general rule that, regardless of the outcome of the litigation, each party must bear its own legal expenses. 2 Roy Ryden Anderson, *Damages Under the Uniform Commercial Code* § 11.34, p. 132 (1992). Because Section 47–9–404(1) does not specifically provide for attorney's fees, the allowance of attorney's fees is not authorized. Accordingly, the judgment that Kultura is not entitled to attorney's fees is affirmed.

2. Tenn.R.App.P. 13(d).

The Court of Appeals' decision is reversed, and the trial court's judgment awarding the statutory penalty of $100.00 is affirmed. Costs are taxed to the defendant-appellee, Southern Leasing.

ANDERSON, C.J., and DROWOTA, BIRCH and WHITE, JJ., concur.