November 24, 1997

FOR PUBLICATION

IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FILED

November 24, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

CARL NELSON,                    (
                               (
    Plaintiff-Appellee,        (
                               (  Shelby Circuit
                               (
v.                             (  Hon. James M. Tharpe, Judge
                               (
                               (  S. Ct. No. 02S01-9604-CV-00036
HAROLD EUGENE MARTIN AND       (
JACK W. GAMMON,                (
                               (
    Defendants-Appellants.     (

For Plaintiff-Appellee:              For Defendants-Appellants:

Gavin M. Gentry                      J. Cecil McWhirter
Memphis                              Sally F. Barron
                                       McWhirter & Wyatt
OF COUNSEL:                          Memphis

Armstrong, Allen, Prewitt,           Leo Bearman, Jr.
  Gentry, Johnson & Holmes           Elizabeth E. Chance
Memphis                                Baker, Donelson, Bearman
                                       & Caldwell
                                     Memphis

**O P I N I O N**

MOTION TO DISMISS AND MOTION
FOR SUMMARY JUDGMENT SUSTAINED;
SUIT DISMISSED; CASE REMANDED TO
TRIAL COURT.                                    REID, J.

This is a suit by a shareholder in a close corporation[1] against the two remaining shareholders alleging the wrongful termination of his employment by the corporation and also his wrongful removal as an officer and a director. The case is before the Court on the defendants' motions to dismiss and their motions for summary judgment. The motions are sustained on all counts.

**I**

The facts essential to consideration of the motions are not disputed. Prior to the action on which the suit is based, the plaintiff, Carl Nelson, and the defendants, Harold E. Martin and Jack W. Gammon, were the only and equal shareholders in B & M Printing Company. The company, which was organized as a partnership in 1968 but subsequently converted into a corporation, was engaged in the commercial printing business. Nelson, Martin, and Gammon were officers and directors of the corporation and they also were full time employees. They received no compensation for their services as officers and directors but were paid salaries, commissions, and bonuses as employees. The parties also received rent from a building owned by them equally which was rented to the corporation. Originally, each shareholder served as president of

---

[1]A close corporation is one in which:

> (1) there are few shareholders, (2) the shares are not traded on the securities market (3) the shareholders live in the same geographical area, and (4) most of the shareholders serve as directors, officers and employees of the business.

Johns v. Caldwell, 601 S.W.2d 37, 41 (Tenn. App. 1980).

the corporation for one year on a rotating basis.  Upon the advice of a business consultant, that practice was discontinued and Martin had served as president for several years prior to the action which prompted this suit.

In March 1989, Nelson and Martin became involved in an acrimonious dispute regarding one of Nelson's customer accounts.  Martin expressed concern that the account was not being properly serviced, which Nelson denied.  Nelson admitted that he used highly offensive language towards Martin but contended that was not unusual or significant.  As the result of the dispute, Martin, as president and without consultation with Gammon, gave Nelson written notice that his employment with the corporation was terminated immediately.  Shortly thereafter, the board of directors on the votes of Martin and Gammon confirmed the termination of Nelson as an employee and also removed him as an officer and director of the corporation.  There is no indication in the record that Martin and Gammon discussed the matter prior to the board meeting, which was attended by Nelson's attorney and proxy.

Nelson's annual compensation at the time his employment was terminated was in excess of $250,000.

Subsequently, Martin and Gammon leased a separate building owned by them to the corporation.

During the pendency of the suit, the parties voluntarily

sold their shares in the corporation for a total of approximately $6 million, which amount they all agree was a fair price.

## II

Nelson's suit seeking $6 million in compensatory damages and $12 million in punitive damages asserts four theories of liability - the defendants, "conspiring together and acting in their individual and personal capacities," maliciously induced the corporation to terminate his employment; the defendants interfered with the "plaintiff's prospective [economic] advantage;" the defendants wrongfully procured the breach of a contract of employment with the corporation in violation of Tenn. Code Ann. § 47-50-109; and the defendants breached a fiduciary duty owed the plaintiff.

On the defendants' motions that the complaint fails to state a cause of action, the trial court dismissed the claim that the defendants wrongfully interfered with a prospective economic advantage, and on the defendants' motions that the case presents no genuine issue of material fact, the trial court dismissed the remaining claims.

The Court of Appeals affirmed the dismissal of the first three claims but reversed summary judgment on the claim that the defendants violated a fiduciary duty owed to the plaintiff.

All issues are before the Court on appeal.

### III

Nelson insists that the trial court and the Court of Appeals erred in dismissing his claim for wrongful interference with a prospective economic advantage. This claim is before the Court on the defendant's motions to dismiss for failure to state a claim on which relief can be granted. Tenn. R. Civ. P. 12.02(6).[2] This claim has been asserted in this Court in two prior cases. In the first, Quality Auto Parts v. Bluff City Buick, 876 S.W.2d 818 (Tenn. 1994), an employee accused of stealing from his company filed a counter-claim of intentional interference with prospective business relations alleging that the accusations were preventing him from obtaining employment.[3] The Court noted that although such a claim has been recognized as a cause of action in other

---

[2]This issue is subject to the same analysis made below regarding the charges that the defendants "induced" and "procured" the termination of the plaintiff's employment with the corporation. The defendants, acting on behalf of the corporation, terminated the plaintiff's employment. There was no three-party relationship, only the two-party relationship of employer and employee. However, since the issue is before the Court on the motion to dismiss for failure to state a cause of action, it will be considered in that context.

[3]The Court in Quality Auto Parts v. Bluff City Buick set out the elements which generally are found to constitute a cause of action for wrongful interference with a prospective economic advantage:

> (1) the existence of a business relationship or expectancy (an existing contract is not required); (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional act of interference; (4) proof that the interference caused the harm sustained; and (5) damage to the plaintiff.

Id. at 823.

jurisdictions, it has not been recognized nor rejected in Tennessee. The Court found that it was unnecessary to decide whether the claim is a cause of action in Tennessee because it, nevertheless, would "fail because [the] complaint does not allege two essential elements of the tort - (1) the existence of a specific prospective employment relationship and (2) knowledge by [the company] of such a relationship." Id. at 823. In the second case, Kultura, Inc. v. Southern Leasing Corp., 923 S.W.2d 536 (Tenn. 1996), the issue concerned the liability of a company which had filed a financing statement and failed to timely file a termination statement. The Court noted that "intentional interference with prospective economic advantage has not been recognized as a cause of action in this state" but, again, found the issue to be moot because the plaintiff had failed to prove any damages. Id. at 540.

Since the legislature has not enacted a statutory cause of action for interference with a prospective economic advantage, the claim can be maintained only if it is found to be a part of the common law in this State. The tort of intentional interference with a prospective economic advantage is an extension of the principles establishing liability for interference with contract beyond the existing contractual relation to those relations which are "merely prospective or potential." See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 130, at 1005 (5th ed. 1984). The action for interference with contract is based on society's need for stability in contractual relations. "The tort protects society's interest in preserving the formal integrity of

contract and rests on an implicit appreciation of the fundamental, structure-giving significance of contracts in a market economy." John Danforth, Tortious Interference with Contract:  A Reassertion of Society's Interest in Commercial Stability and Contractual Integrity, 81 Colum. L. Rev. 1491, 1523 (1981).  However, the policy reasons for the tort prohibiting interference with contracts, do not support a tort designed to protect prospective contracts and relationships.  In Prosser, the tort for interference with a prospective economic advantage is described as "a rather broad and undefined tort in which no specific conduct is proscribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way."  Prosser, § 129 at 979. Danforth makes this further comparison:

> [C]ontracts not only embody a bargained-for exchange, but also create a system of predictability in the commercial realm.  By guaranteeing future performance, a contract may engender reliance and facilitate long-term planning by parties not directly involved with the contract itself.  Whatever social value underlies tortious interference liability, therefore, is contingent upon just this: That the relationship disrupted involved an agreement to be bound to future performance.  . . .
>
> . . . Prospective contracts, either existing relationships expected to mature into contracts or expectations of future advantageous relationships, do not involve an agreement to be bound to future performance. Interference with prospective contracts, therefore, does not threaten a societal interest in the formal integrity of contract, and should not be treated as a mere variant of interference with existing contracts.

*Tortious Interference with Contract*, 81 Colum. L. Rev. at 1515. "Extending the tort to protect prospective contracts [means] diffusing society's general interest in contractual stability and equating it with the aggregate self-interests of particular plaintiffs in the stability of their own contracts." *Id*. at 1517. *See* also Francis Bowes Sayre, *Inducing Breach of Contract*, 36 Harv. L. Rev. 663, 703 (1922-23). Such an extension is inconsistent with the principles of free competition in business relationships found in this state. As one South Carolina judge noted, such a cause of action would "greatly hamper free competition in the marketplace." *Crandall Corp. v. Navistar Int'l Transp. Corp.*, 395 S.E.2d 179, 181 (S.C. 1990) (Littlejohn, A.A.J., dissenting) ("I see the choice is clearly for that which promotes freedom of negotiation and competition in the marketplace, which is a cornerstone of our democratic society.") Other general criticisms of the tort of interference with contract are applicable as well:

> [T]he tort has a highly detrimental effect on commerce and individual liberty. The tort hinders market efficiency, produces erroneous liability rulings, and fosters uncertainty in the law. The courts' interest-balancing approach to the tort is unworkable. Fundamental constitutional rights, including freedom of speech and due process, are impaired. Other rights necessary for a free society, such as freedom of thought, are also detrimentally impacted. Moreover, the tort ... places an unnecessary burden on an already strained legal system.

Gary D. Wexler, *Intentional Interference with Contract: Market*

*Efficiency and Individual Liberty Considerations* 27 Conn. L. Rev. 279, 281-82 (1994).  The trial court and the Court of Appeals correctly found that the claim of interference with a prospective economic advantage does not state a cause of action under the law of Tennessee.

**IV**

The remaining issues are before the Court on the defendants' motion for summary judgment.  In *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997), this Court set forth the standards governing an appellate court's review of a motion for summary judgment:

> Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met.  *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991).  Tenn. R. Civ. P. 56.03 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts.  *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993).  The moving party has the burden of proving that its motion satisfies these requirements.  *Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991).  When the party seeking summary judgment makes a properly supported motion, the burden shifts to the  nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.  *Byrd*, 847 S.W.2d at 215.

Martin and Gammon assert that Nelson has not presented evidence which creates a disputed issue of material fact.

V

Plaintiff's counsel admits to some uncertainty as to the causes of action presented by the allegations. Counsel, according to the brief, set forth the allegations of fact, then asserted that the allegations support the several causes of action named. There is however a fatal inconsistency between the facts alleged and two of the claims asserted. Claims that the defendants wrongfully "procured" or "induced," the termination of Nelson's employment contemplate a three-party relationship - the plaintiff as employee, the corporation as employer, and the defendants as procurers or inducers. The facts alleged show there was no three-party relationship. The defendant Martin was the president and chief executive officer of the corporation and the defendant Gammon was a director. In order for there to be a three-party relationship, there must be a showing that the defendants were acting outside the scope of their duties as officers of the corporation rather than on behalf of the corporation.

The Court addressed this issue in <u>Forrester v. Stockstill</u>, 869 S.W.2d 328 (Tenn. 1994), in which a discharged employee sued two directors of the employer corporation for interfering with the employment relationship. The Court stated:

> Since, with the exceptions noted, the discharge from employment of an employee-at-will by the employer is not actionable, but the wrongful interference with at-will employment by third persons is actionable, Forrester's suit against Stockstill and Kisabeth can be maintained only if the proof establishes that they stood as third parties to the employment relationship at the time they performed the acts found to have caused Forrester's discharge.

Id. at 331. As more fully discussed below, the facts alleged do not show that the defendants acted other than as officers of the corporation. The plaintiff charges that his employment was terminated by the defendants. His essential complaint is that the defendants acted wrongfully in terminating his employment. Consequently, on the pleadings and proof, there could be no finding that the defendants induced or procured a breach of contract. Consequently, the record does not present a disputed issue of material fact on the claims that the defendants induced or procured the termination of plaintiff's employment. The trial court and the Court of Appeals properly dismissed those claims.

The claim that the defendants breached a fiduciary relationship, however, contemplates a two-party relationship, the plaintiff and the defendants as shareholders. Whether there are disputed issues of material fact on this issue must be determined within the context of the legal duty owed the plaintiff by the defendants. In making that determination, the most significant legal issue presented is whether there existed a fiduciary relationship between the parties.

This Court has stated that majority shareholders owe a fiduciary duty to minority shareholders.  Mike v. Po Group, Inc., 937 S.W.2d 790, 793 (Tenn. 1996);  Nelms v. Weaver, 681 S.W.2d 547, 549 (Tenn. 1984), cert. denied, 476 U.S. 1118 (1986);  Dale v. Thomas H. Temple Co., 186 Tenn. 69, 208 S.W.2d 344, 352 (1948). The Court of Appeals stated in Johns v. Caldwell, 601 S.W.2d 37 (Tenn. App. 1980), "Our courts are prompt to redress the injuries to minority stockholders caused by the wrongdoings of majority stockholders."  Id. at 41 (citing McCampbell v. Fountain Head Railroad Co., 111 Tenn. 55, 77 S.W. 1070 (1903)).  Those cases did not consider the issues presented by the case before the Court.  In Johns v. Caldwell, the plaintiff owned 45 percent of the corporation's stock.  He brought suit against the other two shareholders, Caldwell who owned 45 percent and Moore who owned 10 percent of the shares.  Johns sought to prevent the transfer by Moore of his shares to Caldwell or to require an equal division of Moore's stock between Johns and Caldwell.  Johns, 601 S.W.2d at 39. The Johns Court held that neither Moore nor Caldwell owed a fiduciary duty to Johns regarding the sale and purchase of Moore's shares of stock.  Id. at 44, 45.  The basis of the dispute in that case was not action taken by a majority shareholder or the corporation affecting the interest of another shareholder but rather the competing efforts of two shareholders to acquire the shares of the third shareholder.  In Intertherm v. Olympia Homes Systems, 569 S.W.2d 467 (Tenn. App. 1978), the court noted that the transactions of majority or dominant shareholders will be closely scrutinized for good faith and fairness if challenged.  The court

stated that it would "apply the rule of close scrutiny and place the burden on the shareholder to justify a transaction with his corporation only when the shareholder owns a majority of stock, or is shown to dominate or control the corporation to a significant degree in some other way." Id. at 472. Again, the dispute in Intertherm was not based on action taken by shareholders in a close corporation affecting the interests of other shareholders. The dispute was between shareholders claiming a security interest in corporate property and nonshareholder creditors of the corporation. The court found that there was no fiduciary relationship between the shareholders and the corporation because they were not dominant shareholders and therefore their loan to the corporation would not be closely scrutinized for good faith. The shareholders' priority over the general creditors was accordingly upheld.

The Court has not addressed specifically the issues presented in this case, the relationship between shareholders in a close corporation where there is no majority or dominant shareholder and the dispute relates to the shareholders' interests as shareholders. The Court of Appeals relied upon the decision in Wilkes v. Springside Nursing Home, Inc., 353 N.E.2d 657 (Mass. 1976), in which the Massachusetts court held there is a fiduciary relationship between shareholders of a close corporation. In Wilkes, the Court stated that "stockholders in the close corporation owe one another substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another." Id. at 661 (quoting Donahue v. Rodd Electrotype Co., 328

-13-

N.E.2d 505, 515 (1975)). That standard of duty is one of "utmost good faith and loyalty." Id. (quoting Cardullo v. Landau, 105 N.E.2d 843 (Mass. 1952)); see also Blank v. Chelmsford OB/GYN, P.C., 649 N.E.2d 1102, 1105 (Mass. 1995).[4] The rationale for the Wilkes decision has been stated as follows:

> In spite of the traditional adherence to majority rule and the business judgment rule, many courts in this country have moved steadily toward providing a remedy for oppressed minority shareholders. Some courts have made clear that they will not apply the business judgment rule unless the directors not only have acted in good faith, but also have exercised proper care, skill, and diligence. For many courts, the response has been to impose a fiduciary duty on the controlling shareholders for the benefit of minority interests. Courts increasingly have been willing to recognize an enhanced fiduciary duty among shareholders in a close corporation.

F. Hodge O'Neal and Robert Thompson, O'Neals Oppression of Minority Shareholders § 10:04, at 16 (2d ed. 1995).

The Court in Wilkes held:

> Therefore, when minority stockholders in a close corporation bring suit against the majority alleging a breach of the strict good faith duty owed to them by the majority, we must carefully analyze the action taken by the

---

[4]A number of other jurisdictions have cited Donahue and Wilkes or otherwise held that shareholders in a close corporation have a heightened fiduciary obligation to other shareholders. See W&W Equipment Co. v. Mink, 568 N.E.2d 564, 570 (Ind. Ct. App. 1991); Crosby v. Beam, 548 N.E.2d 217, 220 (Ohio 1989); Daniels v. Thomas, Dean & Hoskins, Inc., 804 P.2d 359, 366 (Mont. 1990); see also Long v. Atlantic PBS, Inc., 681 A.2d 249, 256 n. 8 (R.I. 1996).

> controlling stockholders in the individual case. It must be asked whether the controlling group can demonstrate a legitimate business purpose for its action.

Wilkes, 353 N.E.2d at 663.[5] The Court in Wilkes realized, however, that in the management of the corporation, the Court should not substitute its judgment for the good faith action of the shareholders.

> [W]e acknowledge the fact that the controlling group in a close corporation must have some room to maneuver in establishing the business policy of the corporation. It must have a large measure of discretion, for example, in declaring or withholding dividends, deciding whether to merge or consolidate, establishing the salaries of corporate officers, dismissing directors with or without cause, and hiring and firing corporate employees.

Id. at 663.

Based on these principles, Martin and Gammon, together and separately, were obligated to deal fairly and honestly with Nelson and could not act out of avarice, malice, or self-interest in violation of their fiduciary duty to him as a shareholder.

## VI

---

[5]The Wilkes fiduciary standard, as it relates to employment decisions, is not universally accepted. A case in opposition to the Wilkes approach is Ingle v. Glamore Motor Sales, Inc., 535 N.E.2d 1311, 1313-14 (N.Y. 1989); see also St. Joseph's Reg. Health Ctr. v. Munos, 934 S.W.2d 192, 198 (Ark. 1996) (following Ingle).

Nelson asserts essentially that Martin and Gammon wrongfully terminated his employment.  The question is whether the record contains material evidence that Martin and/or Gammon violated the fiduciary duty owed to Nelson in terminating his employment. Nelson acknowledges that there was no written contract of employment between the corporation and him, but asserts there was a general agreement among the shareholders that each was entitled to work for the corporation for life.  Even if the deficiencies in the proof of a contract should be disregarded, Nelson's employment was terminable at will.  There is no evidence, or even claim by Nelson, that he furnished any consideration for his employment other than his services as an employee.  The rule has been well stated by the Court of Appeals.  "Our courts have long held that an oral contract for life time employment or permanent employment amounts to an indefinite hiring terminable at the will of either party where the employee furnishes no consideration other than the services required in the agreement." Price v. Mercury Supply Co., 682 S.W.2d 924, 934 (Tenn. App. 1984); Combs v. Standard Oil Co., 166 Tenn. 88, 90-92, 59 S.W.2d 525, 526-27 (Tenn. 1933).  Consequently, the corporation's prerogative to discharge Nelson as an employee was not constrained by an employment contract.

There is in the record no evidence that Martin acted other than within the scope of his duties as president or that Martin and Gammon acted other than within the scope of their duties as directors.  Consequently, there is no evidence that the

-16-

defendants "procured" the plaintiff's discharge. Pursuant to the bylaws of the corporation, Martin, as president, had the authority to discharge employees of the corporation, including Nelson, and Martin and Gammon, as directors, had the authority to confirm the employment action taken by the president and to remove Nelson as a director.[6] In the exercise of those powers and duties on behalf of the corporation, Martin and Gammon owed a duty of good faith and fairness to Nelson. However, they also owed a duty of good faith and fairness to the corporation which they served as officers. <u>See</u> Tenn. Code Ann. §§ 48-18-403(a)(1), (3) (1995), 48-18-301(a)(1), (3) (1995);[7] <u>Knox-Tenn Rental Co. v. Jenkins Ins., Inc.</u>, 755 S.W.2d

---

[6]The bylaws provide:

The President shall have the following powers and duties: . . . He shall appoint and, at his discretion, remove or suspend permanently or temporarily, as he may, from time to time think fit, the agents, employees or servants of the corporation . . .

. . .

Each Director shall serve for the term of one (1) year, and until his successor shall have been duly elected and qualified subject, however, to the right of removal of any Director at any time by the affirmative vote of the holders of the majority of the stock of the corporation entitled to vote, such removal to be by resolution adopted at any meeting of Stockholders, whether regular or special meeting

. . .

The Officers of the corporation shall hold office for one (1) year, or until their successors are chosen and qualified in their stead. Any Officer elected or appointed by the Board of Directors may be removed at any time by the affirmative vote of the majority of the Directors.

[7]Tenn. Code Ann. § 48-18-403 provides:

(a) An officer with discretionary authority shall discharge all duties under that authority:

   (1) In good faith;

   . . .

   (3) In a manner the officer reasonably believes to be in the best interest of the corporation.

33, 36-37 (Tenn. 1988).  If Martin and Gammon were protecting legitimate interests of the corporation, the presence of spite or ill will would not render them or the corporation liable.  See Forrester v. Stockstill, 869 S.W.2d 328, 333 (Tenn. 1994).

Consequently, the first question is whether Martin and Gammon were performing the duties as officers of the corporation in good faith and in furtherance of the perceived best interest of the corporation.  The burden was on Nelson to produce evidence that they were not acting in good faith in furtherance of the corporation's best interest.  The Court stated in Forrester v. Stockstill that the critical factors in determining if action taken by directors of a corporation was in good faith are "intent, motive or purpose, and means."  Id. at 333.  The only evidence relating to Martin's intent or motive in terminating Nelson's employment is the cause and circumstances of his and Martin's dispute.  The only evidence relating to Gammon's intent or motive are his votes as a director.  There is no evidence that the termination of Nelson's employment or his discharge as an officer and a director were prejudicial to the corporation's best interest.  The fact that Nelson sustained the loss of employment with the accompanying

---

Tenn. Code Ann. § 48-18-301 states:

> (a) A director shall discharge all duties as a director, including duties as a member of a committee:
>
> > (1) In good faith;
> >
> > . . .
> >
> > (3) In a manner the director reasonably believes to be in the best interests of the corporation.

-18-

compensation is not evidence that the corporation was prejudiced or that Martin and Gammon acted with malice, avarice, or self-interest.  The evidence does not create a disputed issue of material fact regarding the good faith performance of the defendants.  Byrd v. Hall, 847 S.W.2d at 215.

An important public policy is at stake.  Although directed toward a slightly different issue, the following statement made by the Court in Forrester, is relevant and appropriate:

> A corporation can act only upon the advice of its officers and agents, and its officers and directors have a duty to serve the corporation.  Important societal interests are served by corporations having the clear and candid advice of their officers and agents.  Fear of personal liability would tend to limit such advice.  Consequently, when an officer, director, or employee of a corporation acts within the general range of his authority, and his actions are substantially motivated by an intent to further the interest of the corporation, in claims of intentional interference with employment, the action of the officer, director, or employee is considered to be the action of the corporation and is entitled to the same immunity from liability.

Id. at 334-35.

VII

The shareholders of a close corporation share a fiduciary relationship which imposes upon all shareholders the duty to act in good faith and fairness with regard to their respective interests

-19-

as shareholders.  Officers and directors of a corporation owe a similar duty to the corporation.  In order to withstand a motion for summary judgment, allegations that the fiduciary duty has been violated must be supported by material evidence that the action was not in the perceived best interests of the corporation and further that it was motivated by malice, avarice, or self-interest.  The evidence in the record does not present a disputed issue of material fact.  Consequently, the motions are sustained and the suit is dismissed.

The case is remanded to the trial court for any further proceedings consistent with this opinion.

Costs are assessed against Nelson.

                        _____
                        Reid, J.

Concur:

Anderson, C.J., Drowota, Birch,
  and Holder, JJ.