IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 19, 2013 Session

## KEITH A. DAVIS v. SHAW INDUSTRIES GROUP, INC. ET AL.

**Appeal from the Circuit Court for Franklin County**
**No. 17870-CV      J. Curtis Smith, Judge**

---

**No. M2012-01688-COA-R3-CV - Filed April 12, 2013**

---

Plaintiff was terminated from his at-will employment for violating company policy by allegedly lying during an investigation into whether he was involved in a romantic relationship with a human resources manager. Plaintiff filed this action against his former supervisor, and his former employer, for intentional interference with his employment. Defendants moved for summary judgment, arguing that, as a matter of law, the corporate employer cannot be held liable for intentionally interfering with its own employment contracts, and that the undisputed facts established the supervisor did not act outside the scope of his authority in assisting in the investigation; thus, he could not be held liable. The trial court granted Defendants' motion. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.J., and ANDY D. BENNETT, J., joined.

Gregory M. O'Neal, Winchester, Tennessee, for the appellant, Keith A. Davis.

Rosemarie L. Hill, and Justin Lewis Furrow, Chattanooga, Tennessee, for the appellees, Shaw Industries Group, Inc. and Andrew Plisko.

### OPINION

Keith Davis ("Plaintiff") was a long-term employee at Shaw Industries Group, Inc. ("Shaw"), a carpet and flooring manufacturer. He began as an hourly-wage employee in 1996 at the Winchester, Tennessee plant, and advanced to a salaried, supervisory position. At all relevant times, Shaw had a policy prohibiting employees in supervisory positions from dating or becoming romantically involved with any "associate under his or her supervision or over whom such management associate may be in a position to exert influence."

In the summer of 2008, Plaintiff separated from his wife, Marlene Davis, who was also a long-term employee at Shaw.[1] Approximately two weeks after they separated, Mrs. Davis notified the plant manager, Andrew Plisko, that Plaintiff was having an affair with Katherine Brinkley, the Manager of Human Resources ("HR") at the Winchester plant. As the HR Manager, Ms. Brinkley was in a supervisory position over Plaintiff; therefore, pursuant to Shaw's policy prohibiting employees in supervisory positions from dating or becoming romantically involved with any "associate under his or her supervision or over whom such management associate may be in a position to exert influence," Mr. Plisko investigated Mrs. Davis's allegations. Mr. Plisko also notified David Masters, Shaw's Director of Human Resources who was located in the Dalton, Georgia office.

As Shaw's Director of Human Resources, Mr. Masters was Ms. Brinkley's direct supervisor. After speaking with Plaintiff and Ms. Brinkley, who both admitted a friendship since high school but denied any romantic involvement, Mr. Plisko concluded there was not sufficient evidence to establish a violation of company policy and closed the investigation.

Not to be deterred, Mrs. Davis persisted in her allegations, continuing to direct them to Mr. Plisko and later directing them to Mr. Masters in Dalton. Upon learning of Mrs. Davis' allegations, Mr. Masters conducted his own investigation into the matter (his first of two investigations), after which he concluded there was not sufficient evidence that Plaintiff and Ms. Brinkley were romantically involved, thus no violation of company policy, and closed his investigation. Nevertheless, because the allegations involved the Winchester plant's HR person, whom Mr. Masters supervised from a distance, Mr. Masters instructed Mr. Plisko to keep him apprised and to forward to Mr. Masters any new information Mr. Plisko received.

Mrs. Davis subsequently contacted the equal employment opportunity manager for Shaw, Christi Sparks, who, like Mr. Masters, was located in Dalton. After speaking with Mrs. Davis, Ms. Sparks also spoke with Mr. Masters and Ms. Brinkley; she also obtained and reviewed Ms. Brinkley's phone records. Ultimately, Ms. Sparks reached the same conclusion as Plisko and Masters and closed her investigation.

For the remainder of 2008 and into 2009, Mr. Plisko received occasional reports from employees at the Winchester plant that Plaintiff and Ms. Brinkley were romantically involved and that they had been seen together at plant functions and around town. As previously instructed, Mr. Plisko forwarded this information to Mr. Masters.

---

[1]Keith and Marlene Davis divorced in September 2008.

On April 24, 2009, Ms. Brinkley resigned from Shaw after accepting an HR supervisory position with a different employer in Huntsville, Alabama. After leaving her employment with Shaw, Ms. Brinkley openly dated Plaintiff.

After Ms. Brinkley left Shaw, several Shaw employees reported to Mr. Plisko that they had seen Plaintiff and Ms. Brinkley together and believed Plaintiff and Ms. Brinkley were romantically involved while they were both employed at Shaw. As before, Mr. Plisko forwarded the information to Mr. Masters.

After reviewing the new reports, Mr. Masters initiated a second investigation; he interviewed the employees who had made statements to Mr. Plisko, and Mr. Masters again interviewed Plaintiff. This time Mr. Masters requested Plaintiffs' phone records and a list of people who had been at Plaintiff's home in the prior year. Plaintiff provided the requested phone records, but refused to disclose his home visitors, informing Mr. Masters it was not any of Shaw's business who visited his home. Mr. Masters also obtained and reviewed Plaintiff's personnel file at which time he discovered that Plaintiff had changed his life insurance policy to designate Ms. Brinkley as the beneficiary.

Shortly thereafter, Mr. Masters informed Plaintiff he would need to resign for "violation of company policy;" specifically, refusing to cooperate and being dishonest during the prior investigations into his relationship with Ms. Brinkley. Plaintiff refused to resign, and was terminated on June 9, 2009.

Plaintiff filed suit against Shaw and Mr. Plisko ("Defendants") on June 3, 2010. He alleged Mr. Plisko "intentionally, maliciously, and without justification procured the discharge of the Plaintiff from his employment with Shaw," and that Mr. Plisko's actions "were motivated by his own interest, were malicious in nature, and were motivated by his personal self-interest rather than the interest of Defendant Shaw." He alleged Shaw was vicariously liable as Mr. Plisko's employer.

Defendants filed a Motion for Summary Judgment on May 25, 2011, arguing that Shaw cannot be held liable for interfering with its own employment relationship as a matter of law, and that the undisputed facts established Mr. Plisko acted well within his authority and not for his own personal benefit in initiating the first investigation and in following Mr. Masters's instructions thereafter, and thus was acting on behalf of Shaw. A hearing was held December 20, 2011, and the trial court granted Defendants' Motion by Order dated June 28, 2012. Plaintiff filed a timely appeal.

**ANALYSIS**

Tennessee is an employment-at-will state. *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). Under the employment-at-will doctrine, an employer may terminate an at-will employee "at any time, for good cause, bad cause, or no cause at all." *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d 521, 526 (Tenn. Ct. App. 2006) (citing *Guy*, 79 S.W.3d at 535). However, "even an at-will employee has a property interest in continued employment without unjustified interference by those who stand outside the employment relationship." *Lyne v. Price*, No. W2000-00870-COA-R3-CV, 2002 WL 1417177, at *2 (Tenn. Ct. App. June 27, 2002) (citing *Ladd v. Roane Hoisery, Inc.,*, 556 S.W.2d 758, 760 (Tenn. 1977)). Intentional interference with that employment interest by a third party, "without privilege or justification, is actionable." *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994); *see also Thompson v. Lee*, No. W2009-02447-COA-R3-CV, 2011 WL 1642614, at *8 (Tenn. Ct. App. April 29, 2011).

To prove a claim of intentional interference with at-will employment, a plaintiff must establish "that the defendant intentionally and without justification procured the discharge of the employee in question." *Ladd v. Roane Hoisery, Inc.*, 556 S.W.2d 758, 760 (Tenn. 1977). The claim "contemplate[s] a three-party relationship – the plaintiff as employee, the corporation as employer, and the defendants as procurers or inducers." *Lyne*, 2002 WL 1417177, at *2 (citing *Nelson v. Martin*, 958 S.W.2d 643, 647 (Tenn. 1997) (overruled on other grounds)).

The trial court correctly determined Shaw cannot be held liable for intentional interference with its own employment relationship with Plaintiff, as a matter of law. The law in Tennessee is clear on this issue: "[A] plaintiff who asserts a claim for intentional interference with employment must assert facts showing that the defendant stood as a third party to the relationship between the plaintiff employee and the employer." *Thompson*, 2011 WL 1642614, at *8; *see also Nelson*, 958 S.W.2d at 647; *Forrester*, 869 S.W.2d at 331; *Lyne*, 2002 WL 1417177, at *2; Bob E. Lype, *A Murky Intersection Between Employment Law and 'Business Torts,'* 38 Tenn. B.J. 27, 29-30 (2002) ("[O]ne of the fundamental axioms of interference claims is that a party cannot be held liable for wrongfully interfering with its own contract – instead, there must be some interference from a separate, third party.").

It is abundantly clear that Plaintiff is unable to establish a claim against Shaw because there is no third-party relationship. Indeed, Plaintiff concedes his claim against Shaw is without merit, and this issue requires no further analysis.

As for Plaintiff's claim of intentional interference with employment against Mr. Plisko, the plant manager, the relevant legal principles can be summarized as follows:

> A corporation may only act through its agents and employees; consequently, a corporate director, officer or employee is not individually liable for tortious interference with . . . an at-will employment agreement, so long as he is acting in furtherance of the corporate interest. *Forrester v. Stockstill*, 869 S.W.2d 328, 334-335 (Tenn. 1994). A corporate director, officer or employee may be held liable for interference with such a contract if "he is acting outside the scope of his authority, acting with malice, or acting to serve his own interests." *Id.* at 333 (quoting Thomas G. Fisher, Annotation, *Liability of Corporate Direct, Officer or Employee for Tortious Interference with Corporation's Contract with Another*, 72 A.L.R. 4th 492 (1989)).

*Lyne*, 2002 WL 141777, at *2-3.

The basis for Plaintiff's claim against Mr. Plisko is that Mr. Plisko was maliciously relaying untrustworthy reports of Plaintiff's alleged affair with Ms. Brinkley to Mr. Masters, which caused Mr. Masters to re-open the investigation in 2009, after Ms. Brinkley had left her employment with Shaw and after three previous investigations, including one by Mr. Plisko himself, were closed due to a lack of evidence.

Regarding claims against supervisors, our Supreme Court has explained:

> With intent to interfere as the usual basis of the action, the cases have turned almost entirely upon the defendant's motive or purpose, and the means by which he has sought to accomplish it. As in the cases of interference with contract, any manner of intentional invasion of the plaintiff's interests may be sufficient if the purpose is not a proper one. . . . .
>
> Most of the decisions . . . have turned upon the defendant's motive or purpose. Again, as in the case of interference with contract, the defendant has been held liable if the reason underlying his interference is purely a malevolent one, and a desire to do harm to the plaintiff for its own sake. On the other hand, some element of ill will is seldom absent from intentional interference; and if the defendant has a legitimate interest to protect, the addition of a spite motive usually is not regarded as sufficient to result in liability.

*Forrester*, 869 S.W.2d at 332-33 (quoting W. Page Keeton, *Prosser & Keeton on the Law of Torts* § 130, pp. 1009-10 (5th ed. 1984)). Thus, when a corporate employee or officer "acts

within the general range of his authority, and his actions are substantially motivated by an intent to further the interest of the corporation, . . . the action . . . is considered to be the action of the corporation and is entitled to the same immunity from liability." *Id.* at 334-35.

The following facts are undisputed in this case: Plaintiff's ex-wife, Mrs. Davis, filed the complaints that started the investigation into whether Plaintiff and Ms. Brinkley were romantically involved. Mr. Plisko reported the matter to Mr. Masters, as required by Shaw corporate policy. Mr. Masters instructed Mr. Plisko to continue forwarding any reports from the Winchester plant relating to the situation. New reports came in after Ms. Brinkley left Shaw, which Mr. Plisko forwarded to Mr. Masters, who decided to re-open the investigation. During Mr. Masters's second investigation, Plaintiff refused to provide Mr. Masters with a list of all the people who had visited his home in the year preceding the investigation.[2] Finally, it is undisputed that Mr. Masters, not Mr. Plisko, made the decision to terminate Plaintiff's at-will employment based on Plaintiff's violation of Policy Number E-6 of the Shaw Corporate Human Resources Associate Guide, which provides:

> From time to time, it may become necessary for the Company [Shaw] to conduct an investigation of various employment matters including, but not limited to, allegations of improper behavior, violations of Company policy, discrimination, sexual harassment, etc.

> During the court of such investigations, any associate called upon for a fact-finding interview is expected to fully cooperate with the investigation by actively participating in the interview and by providing the Company with all facts that the associate possesses regarding the situation being investigation. Any associate who refuses to participate in an investigation or who is found not to be truthful and complete in his/her responses will be subject to corrective action, up to and including termination.

This undisputed evidence compels two conclusions: First, Mr. Plisko's actions did not cause Plaintiff to be terminated. Plaintiff was terminated by Mr. Masters, against whom Plaintiff alleges no wrongdoing, not for having a romantic relationship with Ms. Brinkley, but because Mr. Masters determined Plaintiff failed to comply with the above-quoted Shaw corporate policy. *Cf. Fitzgerald v. Abbott*, No. M2008-00920-COA-R3-CV, 2009 WL 304421, at *3 (Tenn. Ct. App. Feb. 5, 2009) (Affirming grant of summary judgment to

---

[2]Mr. Masters denies that he made this request of Plaintiff; he claims that he asked Plaintiff to list any people who visited his home in the year preceding the investigation who could be mistaken for Ms. Brinkley. Because this matter was resolved at summary judgment, we accept Plaintiff's account of the investigation. *See Martin,* 271 S.W.3d at 84; *Stovall*, 113 S.W.3d at 721; *Godfrey*, 90 S.W.3d at 695.

defendant supervisor, finding, "Mr. Abbott's actions did not cause [the plaintiff] to be discharged. Rather, [the plaintiff] was terminated by Mr. Abbott's superiors who, based on their first hand knowledge and evaluations, determined that termination . . . was in the best interests of [the employer]"). Second, the undisputed evidence establishes that Mr. Plisko's actions were in furtherance of a legitimate corporate interest, namely assisting Mr. Masters, the corporate HR director, in investigating the complaints filed by Mrs. Davis, a Shaw employee at Mr. Plisko's plant. *See Lyne*, 2002 WL 141777, at *3.

The party seeking summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the nonmoving party's claim *or* show that the moving party cannot prove an essential element of the claim at trial. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). Both Defendants, as the moving parties, demonstrated that no genuine disputes of material fact exist and that they are entitled to judgment as a matter of law by successfully negating essential elements of Plaintiff's claim. For these reasons, we affirm the trial court's grant of summary judgment to both Defendants.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the plaintiff, Keith Davis.

_____
FRANK G. CLEMENT, JR., JUDGE