# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 30, 2001 Session

# KEEHN V. HOSIER v. CRYE-LEIKE COMMERCIAL, INC.

**Appeal from the Chancery Court for Sumner County**
**No. 99C-188      Tom E. Gray, Chancellor**

---

**No. M2000-01182-COA-R3-CV - Filed July 17, 2001**

---

This appeal involves a dispute regarding the application of an attorney's fees provision in a property management agreement. The property owner filed suit against the property manager in the Chancery Court for Sumner County alleging not only breach of contract but also fraud, misrepresentation, and breach of fiduciary duty. Following a bench trial, the trial court awarded the property owner a $1,600 judgment for breach of contract and dismissed his remaining claims. Thereafter, the trial court awarded the property owner an additional $15,944 for his legal fees and $219 in discretionary costs. The property manager has appealed only from the award for legal fees, asserting that the property owner is not entitled to reimbursement for the legal fee associated with his unsuccessful tort claims. We have determined that the challenged legal services were necessary to counter the property manager's exculpatory clause defense and that the challenged legal fees, under all the circumstances, are reasonable. Accordingly, we affirm the trial court's $15,944 award for legal fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

J. Russell Farrar and Mary Byrd Ferrara, Nashville, Tennessee, for the appellant, Crye-Leike Commercial, Inc.

Keith C. Dennen, Nashville, Tennessee, for the appellee, Keehn V. Hosier.

## OPINION

Dr. Keehn V. Hosier is an OBGYN practicing in Nashville. In January 1998, he purchased a home in Hendersonville. After several months of commuting, Dr. Hosier decided that it would be more convenient to live in Nashville. Accordingly, he decided to lease his home and rent an

apartment nearer to the city. On October 10, 1998, Dr. Hosier and Value First, Inc.[1] entered into an "Exclusive Management and Leasing Agreement." Dr. Hosier decided to lease the house for $1,600 per month to cover both his mortgage payment and Crye-Leike's ten percent management fee. Shortly after signing the agreement with Crye-Leike, Dr. Hosier rented an apartment in Nashville with the expectation that his house would be rented within a few months.

Jackie McCormick was the Crye-Leike employee who was responsible for leasing Dr. Hosier's house. Ms. McCormick advertised the property, and the only person to apply to lease the property was Linda Jordan, an employee of the Gift of Life Ministries. Ms. McCormick and her supervisor told Dr. Hosier that they could not recommend leasing the house to Ms. Jordan because of her questionable credit history. However, Dr. Hosier told them that he was willing to take a chance on Ms. Jordan as long as she had paid the first month's rent and the $1,600 security deposit. Ms. McCormick told Dr. Hosier, "it's taken care of," even though she had collected only $400 from Ms. Jordan – the prorated rent for January 1999.[2]

Ms. Jordan and her two children moved into the house in late January 1999. She did not submit the February rent on time, and her check was returned for insufficient funds. When the same thing occurred in March, Ms. McCormick mailed Ms. Jordan a letter dated March 19, 1999, demanding that she pay the rent or vacate the premises. Ms. McCormick sent Dr. Hosier a copy of this letter along with a note informing him that Ms. Jordan had not paid her security deposit either. After his calls to Crye-Leike's vice president went unanswered, Dr. Hosier contacted a lawyer who filed a detainer action against Ms. Jordan in April 1999. Dr. Hosier obtained a judgment against Ms. Jordan, and she vacated his house on June 11, 1999. Ms. Jordan never paid anything other than the $400 prorated January rent.

In July 1999, Dr. Hosier filed suit against Crye-Leike alleging breach of the property management agreement, fraud, negligent misrepresentation, and breach of fiduciary duty. He sought $10,000 in damages for breach of contract and $50,000 in actual and $50,000 in punitive damages for his tort claims, as well as attorney's fees pursuant to the agreement. Crye-Leike denied all of Dr. Hosier's contract and tort claims. Specifically, it asserted that he and Ms. Jordan were responsible for any damages he had suffered and that Dr. Hosier's claims were barred by an exculpatory clause in the agreement stating that "[a]gent shall not be liable to [o]wner for any error in judgment, nor for any good faith act or omission in the execution of this [a]greement."

---

[1]Value First, Inc. was a subsidiary of Crye-Leike, the real estate broker that had sold Dr. Hosier his home. Value First later changed its name to Crye-Leike Commercial, Inc. We will hereafter refer to the company as Crye-Leike.

[2]Ms. McCormick was not present when Ms. Jordan moved into the house and, therefore, did not obtain the security deposit from Ms. Jordan at that time. Instead, Ms. McCormick relied on Ms. Jordan's assurances that she had mailed a check for the security deposit to Crye-Leike's Brentwood office. Ms. McCormick "assumed" that the Brentwood office had received the security deposit because no one told her otherwise.

Following a bench trial on March 1, 2000, the trial court ruled from the bench that Crye-Leike had breached the property management agreement by failing to collect a $1,600 security deposit from Ms. Jordan. The trial court also dismissed Dr. Hosier's tort claims by finding that he was more than fifty-one percent responsible for permitting Ms. Jordan to rent his house despite the reservations of Ms. McCormick and her supervisor. Accordingly, the trial court awarded Dr. Hosier $1,600 in contract damages and his reasonable attorney's fees pursuant to the property management agreement.

Thereafter, Dr. Hosier's lawyer filed an affidavit stating that his reasonable attorney's fees were $15,944 and that his expenses were $1,710.50. Crye-Leike took exception to this affidavit on the ground that "the plaintiff's affidavit claiming attorney fees and expenses in the amount of $17,654.50 us [sic] unreasonable and outrageous." It asserted that Dr. Hosier was not entitled to recover any legal expenses associated with his unsuccessful fraud, negligence, and breach of fiduciary relationship claims and that Dr. Hosier's lawyer's $180 per hour rate was "an extremely high rate for a simple contract claim." Crye-Leike also objected to a portion of the discretionary fees requested by Dr. Hosier on the same basis. On May 23, 2000, the trial court awarded Dr. Hosier $15,944 in attorney's fees, and on May 26, 2000, the trial court awarded Dr. Hosier $219 in discretionary costs. Crye-Leike has appealed from the portion of the order awarding Dr. Hosier $15,944 in attorney's fees.

## I.

Tennessee follows the "American Rule" with regard to awarding attorney's fees. Litigants are responsible for their own attorney's fees no matter "however wrongful may have been the suit, or however groundless the defense." *Corinth Bank & Trust Co. v. Security Nat'l Bank*, 148 Tenn. 136, 154, 252 S.W. 1001, 1006 (1923). Thus, the courts will not compel losing parties to pay the prevailing party's legal expenses unless such fee-shifting is authorized by statute, contract, or some other recognized equitable ground. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *Kultura, Inc. v. Southern Leasing Corp.*, 923 S.W.2d 536, 540 (Tenn. 1996); *Kimbrough v. Union Planters Nat'l Bank*, 764 S.W.2d 203, 205 (Tenn. 1989).

One of the most common exceptions to the American Rule involves contracts containing provisions expressly allowing the prevailing party to recover its reasonable attorney's fees incurred to enforce the contract. *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985); *Pinney v. Tarpley*, 686 S.W.2d 574, 581 (Tenn. Ct. App. 1984). Thus, parties who have prevailed in litigation to enforce contract rights are entitled to recover their reasonable attorney's fees once they demonstrate that the contract upon which their claims are based contains a provision entitling the prevailing party to its attorney's fees.

The property management agreement in this case contains a provision for attorney's fees. Section S provides that "[i]f either [o]wner or [a]gent commences any litigation to enforce the terms of this [a]uthorization, the prevailing party shall be entitled to receive a reasonable attorney's fee and court costs from the other party hereto." Thus, Dr. Hosier is entitled to his reasonable attorney's fees

if he demonstrates that he is the prevailing party in litigation to enforce the terms of the contract. He is not entitled to recover attorney's fees incurred with regard to a claim or defense that failed. *Beaty v. McGraw*, 15 S.W.3d 819, 831 (Tenn. Ct. App. 1998).

Crye-Leike asserts that Dr. Hosier is entitled to recover attorney's fees for only those services that were directly related to his successful breach of contract claim. It argues that all these services were rendered prior to November 9, 1999, and that all of the legal services rendered after November 9, 1999 could only have been directed toward Dr. Hosier's unsuccessful tort claims. Crye-Leike surmises that Dr. Hosier could only have been tilting at tort windmills after November 9, 1999, because Crye-Leike had effectively conceded the breach of contract claim in its November 9, 1999 answers to Dr. Hosier's first set of interrogatories. We have concluded that Crye-Leike's capitulation on the breach of contract claim in November 1999 was not as complete as Crye-Leike would now like to characterize it.

Dr. Hosier was plainly upset by what he perceived to be Crye-Leike's nonchalant response to Ms. Jordan's default. By the time he filed suit in July 1999, what would in most circumstances have been a simple suit on the property management agreement had mushroomed into a suit, not only seeking $10,000 in damages for breach of contract, but also seeking $100,000 in actual and punitive damages for fraud, misrepresentation, and breach of fiduciary duty. Crye-Leike responded in kind. It filed an answer denying liability to Dr. Hosier under any theory and asserting eleven defenses to his claims. Thereafter, the battle moved from the arena of the pleadings to the arena of discovery.

In its August 16, 1999 answer, Crye-Leike flatly denied that it had failed to collect the required $1,600 security deposit and that it had breached the property management agreement. In addition to various comparative fault defenses, Crye-Leike asserted defenses based on res judicata[3] and failure to mitigate damages. It also invoked an exculpatory clause in the property management agreement stating that "[a]gent shall not be liable to [o]wner for any error in judgment, nor for any good faith act or omission in the execution of this [a]greement."

On November 9, 1999, Crye-Leike prepared its answers to Dr. Hosier's first set of interrogatories in which it stated that "[n]o security deposit was received by the defendant." Taken in the context of the answers to other interrogatories, this statement is far from a concession by Crye-Leike that it was liable to Dr. Hosier for breach of contract. Some of the other answers demonstrate the opposite quite clearly. Crye-Leike was still asserting its exculpatory clause defense to Dr. Hosier's contract claim and was likewise challenging his theory of damages.

Crye-Leike's strategy manifested itself again on January 10, 2000, when it moved for a partial summary judgment. Referencing the extensive discovery that had already taken place, Crye-Leike asserted that Dr. Hosier would be unable to prove his fraud, misrepresentation, and breach of fiduciary duty claims. Invoking the exculpatory clause in the property management agreement, Crye-Leike also argued that

---

[3]This defense was based on a judgment Dr. Hosier had obtained against Ms. Jordan in a separate proceeding.

pursuant to the Exclusive Management and Leasing Agreement which is the subject of this litigation, the plaintiff cannot recover for any error in judgment or good faith act or omission in the defendant's execution of the Agreement, and that, therefore, the plaintiff must prove bad faith on the part of the defendant in order to recover for breach of the Exclusive Management and Leasing Agreement.

The trial court heard argument on February 18, 2000, and entered an order denying the motion on March 3, 2000.

Crye-Leike had still not conceded that it was liable to Dr. Hosier for breach of the property management agreement when the trial commenced on March 1, 2000. At the close of Dr. Hosier's proof, Crye-Leike again sought a directed verdict based on the agreement's exculpatory clause. The trial court denied this motion. In closing argument, Crye-Leike's lawyer again asserted:

> The contract also includes an exculpatory clause which provides that the agent shall not be liable to the owner for any error in judgment, nor for any good faith act or omission in the execution of this agreement.
>
> There has been no proof introduced that Jackie McCormick's failure to collect a security deposit was anything other than an error or omission on her part. She thought it had been received in Brentwood. There was a miscommunication between her and the Brentwood office. No one called her to tell [her that] it hadn't been received. She didn't call to check on it. She thought that it had been received.

Based on these arguments during the trial, it is difficult to fashion convincing argument that Crye-Leike had effectively conceded the breach of contract claim in its November 9, 1999 answers to Dr. Hosier's first set of interrogatories. Accordingly, for the purposes of addressing the issue of the reasonableness of the $15,944 attorney's fee award in this case, we attach no significance to whether the legal services were rendered before or after November 9, 1999. Dr. Hosier's breach of contract claim was at issue through the conclusion of the trial.

## II.

Crye-Leike also mounts a three-pronged attack on the reasonableness of Dr. Hosier's $15,944 attorney's fee. First, it asserts that Dr. Hosier has failed to present evidence regarding any of the reasonableness factors in Tenn. S. Ct. R. 8, DR 2-106(B). Second, it asserts that the fee is "clearly excessive." Third, it asserts that the trial court should have disallowed most of the fee because it involves time spent pursuing Dr. Hosier's unsuccessful tort claims. We are not persuaded by any of these arguments.

## A.

The trial court awarded Dr. Hosier his "reasonable attorney's fees" at the conclusion of the March 1, 2000 trial and instructed the parties that it would conduct another hearing regarding the issue of attorney's fees and costs. On March 10, 2000, Dr. Hosier's lawyer submitted an affidavit regarding the $17,654.50 in fees and expenses generated on his client's behalf in this litigation. He attached to this affidavit his invoices to Dr. Hosier containing a detailed itemization of the professional services and costs related to this proceeding. The lawyer also certified that the time and expenses were "necessary to investigate the facts, prepare the [c]omplaint, prepare responses to the [d]efendant's requests for production of documents and interrogatories, prepare for and attend the depositions of six (6) fact witnesses and one expert witness, prepare interrogatories and requests for production of documents, prepare supplemental responses to the [d]efendant's requests for production of documents and interrogatories, prepare the response to the [d]efendant's motion for partial summary judgment, prepare for and attend the trial of this cause, and otherwise prosecute this [a]ction . . ."

On March 16, 2000, Crye-Leike requested the trial court to determine what a reasonable award for attorney's fees would be. In its motion and accompanying memorandum, Crye-Leike, in unusually sharp terms, characterized Dr. Hosier's attorney's fees as "unreasonable and outrageous," asserted that a $180 hourly rate was "extremely high" for a simple contract claim, and argued that the requested fee was not the fee that Dr. Hosier's lawyer was actually charging.[4]

The trial court conducted a hearing on the attorney's fee question on March 24, 2000. While the record does not contain a transcript or statement of the evidence of this hearing, the trial court apparently received an affidavit from another lawyer who opined that he was familiar with the hourly rates charged by lawyers in Sumner County for cases of this sort and that "[t]he rate of $180 to $185 per hour for a partner in a law firm located within the Metropolitan Nashville Statistical Area is a reasonable hourly rate for a breach of contract action." On April 18, 2000, the trial court filed an order awarding Dr. Hosier $17,654 for his attorney's fees. On May 23, 2000, the trial court filed another order reducing the attorney's fee award to $15,944 because it had inadvertently included discretionary costs in its April 18, 2000 order.

---

[4]Crye-Leike argued: "Defendant would be shocked to learn that the plaintiff actually paid his attorney $17,654.50 for a $1,600.00 contract claim and recovery (and defendant would be evern [sic] further shocked to learn that the plaintiff's attorney actually intends to charge or collect that amount from his client if the Court does not order the defendant to pay them)." Even when employing the most zealous efforts to represent a client, lawyers should refrain from asserting that their adversary is attempting to perpetrate a fraud on the court unless they have some evidence to support it. This record contains absolutely no evidence supporting the claim that Dr. Hosier's lawyer had contrived his invoices simply for the purpose of seeking an award of attorney's fees from Crye-Leike under the property management contract.

**B.**

When the parties' contract provides that the prevailing party is entitled to reasonable attorney's fees in litigation to enforce the contract, the party who prevails is contractually entitled to recover its reasonable attorney's fees, and the trial court has no discretion regarding whether to award attorney's fees or not. However, determining the amount of the attorney's fee that is reasonable is within the trial court's discretion. *Albright v. Mercer*, 945 S.W.2d 749, 751 (Tenn. Ct. App. 1996); *Airline Constr. Inc. v. Barr*, 807 S.W.2d 247, 270 (Tenn. Ct. App. 1990). Accordingly, the appellate courts must review a trial court's determination of the reasonable amount of attorney's fees to which a party is contractually entitled using the "abuse of discretion" standard.

The "abuse of discretion" standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, ___ S.W.3d ___, ___, 2000 WL 354404, at *3 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). Thus, a trial court's discretionary decision will be upheld as long as reasonable minds can disagree about the correctness of the decision. *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000).

Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice on the complaining party. *Clinard v. Blackwood*, ___ S.W.3d ___, ___, 2001 WL 530834, at *1 (Tenn. 2001); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

**C.**

We turn first to Crye-Leike's claim that Dr. Hosier has not submitted sufficient evidence to support a claim for attorney's fees. The doctor, of course, has the burden to make out a prima facie claim for his request for reasonable attorney's fees. *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988); *In re Estate of Perlberg*, 694 S.W.2d 304, 309 (Tenn. Ct. App. 1984). Ordinarily, the party requesting attorney's fees carries this burden by presenting the affidavit of the lawyer who performed the work. *Hennessee v. Wood Group Enters., Inc.*, 816 S.W.2d 35, 37 (Tenn. Ct. App. 1991). Parties opposing a request for attorney's fees should be afforded a fair opportunity to cross-examine the requesting party's lawyer or to present proof of its own. *Kahn v. Kahn*, 756 S.W.2d 685, 696 (Tenn. 1988); *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992).

In this case, the attorney who represented Dr. Hosier submitted an affidavit regarding his services, copies of his invoices to Dr. Hosier detailing these services, and an affidavit by another practicing lawyer stating that the hourly rate charged Dr. Hosier in this matter was consistent with the hourly rate charged by other similarly situated lawyers for similar matters. This evidence was sufficient to shift the burden of going forward to Crye-Leike to demonstrate how the requested fee was unreasonable. As far as this record shows, Crye-Leike put on no such evidence and simply relied on its lawyer's rather strident complaints about the amount of the fee.

Parties seeking to recover their attorney's fees are not expected to march in a parade of witnesses to testify at length about how the requested fee measures up to the factors in Tenn. S. Ct. R. 8, DR 2-106(B). Trial courts are perfectly capable of applying these factors and deciding whether a requested fee is reasonable based on their knowledge of the case and their perception of the value of the services performed. *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d at 873; *Preston Lincoln-Mercury, Inc. v. Kilgore*, 525 S.W.2d 155, 158 (Tenn. Ct. App. 1974); *Tennessee United Paint Store, Inc. v. D.H. Overmyer Warehouse Co.*, 62 Tenn. App. 721, 730, 467 S.W.2d 806, 810 (1971); *Harriman Welding Supply Co. v. Lake City Lightweight Aggregate Corp.*, 46 Tenn. App. 529, 537, 330 S.W.2d 564, 568 (1959). Accordingly, we find that Dr. Hosier presented sufficient evidence to enable the trial court to calculate and award a reasonable attorney's fee.

## D.

Crye-Leike next asserts that Dr. Hosier's attorney's fee is "clearly excessive" for the purposes of Tenn. S. Ct. R. 8. DR 2-106(A). This argument necessarily implies that Dr. Hosier's attorney has "committed an ethical transgression of the most flagrant sort" and must, therefore, forfeit his fee. *White v. McBride*, 937 S.W.2d 796, 803 (Tenn. 1996). We have determined that Crye-Leike has greatly overstated its argument.

An attorney's fee is clearly excessive if, "after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." Tenn. S. Ct. R. 8, DR 2-106(B); *Fell v. Rambo*, 36 S.W.3d 837, 852 (Tenn. Ct. App. 2000); *In re Davis's Estate*, 719 S.W.2d 526, 528 (Tenn. Ct. App. 1986). There is no evidence in the record that a lawyer of ordinary prudence examining the fee charged to Dr. Hosier in this litigation would be left with a definite and firm conviction that the fee is clearly excessive. We have reviewed the record ourselves and have determined that the fee, while high, is in large part due to Crye-Leike's litigation strategy. Accordingly, we have no basis for concluding that the trial court either misapplied the relevant legal principles or based its decision on an erroneous assessment of the evidence.

## E.

As a final argument, Crye-Leike asserts that Dr. Hosier's legal fee is unreasonable in light of the factors in Tenn. S. Ct. R. 8, DR 2-106(B). While it appears to have abandoned its claim that the $180 hourly rate was too high, Crye-Leike asserts that the fee is unreasonable because Dr.

Hosier's lawyer spent more time on the case that it warranted[5] and because most of the lawyer's time was spent pursuing Dr. Hosier's ill-fated tort claims.[6]  These arguments are not supported by the record.

The reasonableness of requested attorney's fees depends on the facts of each case, *Fell v. Rambo*, 36 S.W.3d at 853; *Alexander v. Inman*, 903 S.W.2d 686, 695 (Tenn. Ct. App. 1995), not on the prevailing customs in the area. *Adams v. Mellen*, 618 S.W.2d 485, 489 (Tenn. Ct. App. 1981). Reasonableness determinations should be guided by the factors in Tenn. S. Ct. R. 8, DR 2-106(B). *White v. McBride*, 937 S.W.2d at 800; *Connors v. Connors*, 594 S.W.2d 672, 676-77 (Tenn. 1980); *Albright v. Mercer*, 945 S.W.2d at 750-51; *Alexander v. Inman*, 903 S.W.2d at 695.  The time expended and the hourly rate charged are only two of the many factors influencing the reasonableness of a particular fee. *United Med. Corp. of Tenn., Inc. v. Hohenwald Bank & Trust Co.*, 703 S.W.2d 133, 136 (Tenn. 1986).  Other factors include the nature of the services rendered, the novelty and difficulty of the issues involved, the skill required to perform the services properly, the results obtained, and the experience, skill, and reputation of the attorney performing the services. *Connors v. Connors*, 594 S.W.2d at 676.

We need not tarry long with Crye-Leike's argument that Dr. Hosier's lawyer put too many hours into this case after November 9, 1999, because it had essentially conceded that it had breached the property management agreement by failing to collect the security deposit.  We have already determined that this argument is disingenuous in light of Crye-Leike's aggressive reliance on its defense based on the agreement's exculpatory clause. We have compared Dr. Hosier's lawyer's time records with the record and have determined that the amount of time the lawyer spent on the case after November 9, 1999, was not disproportionate to the procedural and substantive defenses Crye-Leike was continuing to assert.

Crye-Leike also argues that the lawyer's time connected with preparing and presenting Harold F. Morris as an expert witness was unrelated to the breach of contract claim.  Mr. Morris, testifying as an expert in property management, testified that Crye-Leike departed from the generally accepted practice in the industry by failing to collect a security deposit from Ms. Jordan and that Ms. McCormick's failure to collect the security deposit constituted negligence on her part. Clearly, Mr. Morris's testimony was relevant to Dr. Hosier's tort claims.  However, evidence may be relevant to more than one issue.  In light of Crye-Leike's exculpatory clause defense, this testimony was also relevant to the breach of contract claim.

Dr. Hosier asserted that Crye-Leike had breached the property management agreement by failing to collect a security deposit from Ms. Jordan.  Eventually, Crye-Leike conceded that it had not collected the security deposit but asserted that it could not be held liable for this oversight

---

[5]Crye-Leike argues in its brief that "no great skill or time" should have been required to convert its admission that it did not collect the security deposit into a judgment.

[6]Crye-Leike also argues in its brief that "[c]learly, the majority of that fee was incurred to pursue the unsuccessful claims for fraud, misrepresentation, breach of fiduciary duty, and punitive damages."

because the exculpatory clause in the property management agreement shielded it from liability for errors in judgment and acts or omissions in good faith. There, as Crye-Leike's own lawyer put it, Dr. Hosier could recover damages for breach of contract only if he proved "bad faith on the part of the defendant." In order to establish "bad faith," Dr. Hosier was required to prove that Ms. McCormick's conduct fell below the standard of conduct expected from property mangers in the Nashville area. Mr. Morris's testimony was certainly relevant to that issue. Accordingly, we respectfully disagree with Crye-Leike's argument that the attorney's fees relating to pre-trial preparation and in-court examination of Mr. Morris bore no relationship to Dr. Hosier's breach of contract claim.

### III.

Dr. Hosier has also requested this court to award him his attorney's fees for this appeal. We have determined that Crye-Leike pursued this appeal in good faith and not for the purpose of harassment or delay. Accordingly, in our discretion, we decline to order Crye-Leike to reimburse Dr. Hosier for the reasonable legal fees he incurred as a result of this appeal.

### IV.

Based on our review of the record, we have determined that Dr. Hosier's attorney's fee, while high in relation to his recovery, is not unreasonable in light of the litigation strategy employed by the lawyers for both parties in this case. In light of the record before us, we have no basis for overturning the trial court's discretionary decision to award Dr. Hosier $15,944 in attorney's fees. Accordingly, we affirm the judgment for attorney's fees and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Crye-Leike Commercial, Inc. and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE