IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 25, 2024 Session

## MITCHELL D. HORST ET AL. v. GARY GAAR

**Appeal from the Circuit Court for Shelby County**
**No. CT-2722-22     Valerie L. Smith, Judge**
_____

**No. W2023-00442-COA-R3-CV**
_____

The Plaintiffs filed suit against the former father-in-law of one of the Plaintiffs, complaining that, following alleged statements the former father-in-law made to a third party, the third party moved money that had been invested with the former son-in-law. The former father-in-law sought to dismiss the claims that were asserted against him, both pursuant to a Tenn. R. Civ. P. 12 motion to dismiss for failure to state a claim and pursuant to a petition under the Tennessee Public Participation Act. After initially dismissing the Plaintiffs' complaint for failure to state a claim and denying a motion to alter or amend, the trial court held a separate hearing regarding dismissal under the Tennessee Public Participation Act. Ultimately, the trial court ruled that dismissal under the Tennessee Public Participation Act was appropriate and concluded that the former father-in-law was entitled to costs and attorney's fees in connection with this litigation, both in relation to the Tennessee Public Participation Act petition and the Rule 12 dismissal. For the specific reasons stated herein, we affirm the trial court's dismissal under Rule 12, vacate its dismissal—and award of costs and attorney's fees—under the Tennessee Public Participation Act, and affirm the award of costs and attorney's fees that stemmed from the trial court's Rule 12 dismissal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and J. STEVEN STAFFORD, P.J., W.S., joined.

Marti L. Kaufman and Zachary K. Monroe, Memphis, Tennessee, for the appellants, Mitchell D. Horst, Individually, and as Owner of Horst Wealth Management, LLC, d/b/a Select Wealth Advisers, also as a d/b/a of Integrated Advisors Network, LLC, and Mitchell D. Horst as the Investment Advisor of Select Wealth Advisers.

Richard Glassman, Lauran G. Stimac, and Brian Garrott, Memphis, Tennessee, for the appellee.

**OPINION**

**BACKGROUND**

The present litigation commenced when Mitchell Horst ("Mr. Horst") filed a complaint against his former father-in-law, Gary Gaar ("Mr. Gaar"), in the Shelby County Circuit Court ("the trial court"). The pleading was styled as a "Complaint for Tortious Interference of a Business Contract; Intentional Interference with a Business Relationship; [and] Commercial Disparagement and for Violation of the Consumer Protection Act of 1977," and it signaled that the lawsuit was filed by Mr. Horst, individually, and as owner of Horst Wealth Management, LLC ("HWM") d/b/a Select Wealth Advisers ("SWA"), also as a d/b/a of Integrated Advisors Network, LLC. Further, the complaint recited that the lawsuit was filed by Mr. Horst "as the Investment Advisor" of SWA.

According to the complaint, "Horst, HWM and SWA provide customized investment strategies for affluent clients." As is relevant here, the complaint noted that one of Mr. Horst's former clients was Kenneth Hamm ("Mr. Hamm"). Mr. Hamm had been referred to Mr. Horst by Mr. Gaar and, as alleged, had recently signed a contract in March 2021. Mr. Horst "received income, revenue and/or management fees that flowed directly from Hamm's investments with HWM/SWA." Of particular note, however, the contract at issue provided as follows concerning the managed assets: "You may at any time increase or decrease your managed assets." The contract also provided that "Client may terminate this Agreement for any reason at any time."

In April 2021, Mr. Horst found out that Mr. Hamm's account was being transferred away from HWM/SWA to be under the supervision of Edward Jones Investments. Mr. Horst reached out to Mr. Hamm to speak with him about this development, and in response, Mr. Hamm reportedly stated that he had been happy with Mr. Horst's performance but that his movement of assets "had to do with conversations he had with Gaar." Allegedly, "Gaar called [Mr. Hamm] and told him that 'the way things are now,' he needed to move his money." The complaint averred that, "upon information and belief, Gaar was referring to the divorce of Horst and his daughter." The complaint further outlined that Mr. Gaar had allegedly stated to Mr. Hamm that "Horst was leaving Memphis and moving back to Las Vegas permanently, therefore jeopardizing the service and expertise that Hamm was used to getting from Horst/HWM/SWA locally."

In response to the complaint asserted against him, Mr. Gaar filed a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure. In support of the motion, Mr. Gaar contended that the claims for tortious interference of a contract and tortious interference with a business relationship were barred because, in addition to another basis,

the Plaintiffs "failed to properly plead a breach of the contract by the third party to the contract." As for the asserted claim under the Tennessee Consumer Protection Act ("TCPA"), Mr. Gaar submitted that, in addition to another cited basis allegedly supporting dismissal, "only one alleged statement by Defendant relates to the quality of services offered by Plaintiffs' business, and that statement is an opinion and not a fact." Filed contemporaneously with the motion was a supporting memorandum of law which reiterated these cited bases for dismissal.

In addition to filing a motion to dismiss pursuant to Rule 12, Mr. Gaar filed a petition to dismiss under the Tennessee Public Participation Act ("TPPA"). The TPPA petition, which itself essentially just parroted general statutory language of the TPPA, was also accompanied by a memorandum of law. Additional papers concerning the TPPA petition, including a supporting supplemental brief from Mr. Gaar, were filed with the trial court after the court ruled, as discussed below, that the case should be dismissed pursuant to Rule 12.

The Rule 12 motion itself came for hearing in October 2022, and the following month, the trial court orally ruled that it was granting the motion to dismiss. In the ensuing order of dismissal, which was entered on January 30, 2023, the trial court noted in connection with the Plaintiffs' tortious interference claims that the language of the contract at issue "permitted Mr. Hamm to move his money at any time for any reason." Further, as to the TCPA claim, the court held that "the statements allegedly made by the Defendant . . . are opinions and statements of things that were to be made in the future" and "are not, therefore, actionable." In connection with its dismissal of the case, the court stated that it would retain jurisdiction over the unheard TPPA petition to dismiss. The trial court further stated that it "reserves and retains jurisdiction over the requests for attorneys' fees contained in both the Motion to Dismiss and the TPPA Petition to Dismiss, which will be addressed at a separate future hearing." Although a motion to alter or amend was subsequently filed by the Plaintiffs in relation to the dismissal order, the trial court entered an order denying the motion. A notice of appeal was thereafter filed in this Court.

After the Rule 12 dismissal, and after the denial of the Plaintiffs' motion to alter or amend, the trial court held a hearing on Mr. Gaar's TPPA petition. The trial court thereafter entered an order granting the TPPA petition to dismiss, following which another order issued concerning costs, attorney's fees, and expenses. Within the latter order, the trial court not only awarded Mr. Gaar $10,000.00 pursuant to Tennessee Code Annotated section 20-12-119,[1] it also awarded him $11,849.84 pursuant to Tennessee Code Annotated

---

[1] *See* Tenn. Code Ann. § 20-12-119(c)(1) ("[W]here a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief may be granted, the court shall award the party or parties against whom the dismissed claims were pending at the time the successful motion to dismiss was granted the costs and reasonable and necessary attorney's fees incurred in the proceedings as a consequence of the dismissed claims by that party or parties."); Tenn. Code Ann. § 20-12-119(c)(4) ("Notwithstanding any other provision of this section, the court shall not require a

- 3 -

section 20-17-107.[2]

## ISSUES PRESENTED

Multiple issues are presented for this Court's review on appeal. Restated and condensed in their presentation here, the issues raised by Mr. Horst[3] are as follows:

I.   Whether the trial court erred in granting the motion to dismiss and TPPA petition due to those filings allegedly being "skeletal, conclusory and unsupported."

II.  Whether the trial court erred in adjudicating Mr. Gaar's Rule 12 motion and dismissing claims for (a) tortious interference of a contract, (b) tortious interference with a business relationship, and (c) disparagement under the TCPA.

III. Whether the trial court erred in denying relief under Rule 59.

IV.  Whether the trial court erred in granting Mr. Gaar's petition under the TPPA.[4]

V.   Whether the trial court erred in awarding attorney's fees.

## DISCUSSION

We begin our substantive discussion by reviewing the trial court's decision to grant Mr. Gaar's motion to dismiss. "A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). Resolution of the motion "is determined by an examination of the pleadings alone," *id.*, and on appeal, we review the trial court's action de novo, with no presumption of

---

party to pay costs under this section in excess of a combined total of ten thousand dollars ($10,000) in any single lawsuit.").

[2] *See* Tenn. Code Ann. § 20-17-107(a)(1) (providing for an award of court costs, reasonable attorney's fees, discretionary costs, and other expenses to the petitioning party "[i]f the court dismisses a legal action pursuant to a petition filed under this chapter").

[3] To be clear, Mr. Horst is not pursuing this appeal only in his individual capacity. Per the cover page of Mr. Horst's brief, the appeal is nominally being pursued by "Appellants, Mitchell D. Horst, Individually, and as Owner of Horst Wealth Management, LLC, d/b/a Select Wealth Advisers, also as a d/b/a of Integrated Advisors Network, LLC, and Mitchell D. Horst as the Investment Advisor of Select Wealth Advisers." For ease of reference in our discussion, we will hereafter simply refer to "Mr. Horst" alone when discussing any arguments, issues, or the like advanced by the listed Appellants on appeal.

[4] Multiple specific issues are raised that fall under the umbrella of this general topic, but given our disposition herein, we need not detail them in full here.

correctness. *In re Estate of Starkey*, 556 S.W.3d 811, 815 (Tenn. Ct. App. 2018). We may affirm a trial court's decision to dismiss a claim, even if on different grounds than the trial court specifically relied upon, if we determine that the court reached the correct result. *See, e.g.*, *Paczko v. Suntrust Mortgs., Inc.*, No. M2011-02528-COA-R3-CV, 2012 WL 4450896, at *3 n.3 (Tenn. Ct. App. Sept. 25, 2012) (stating this principle in connection with the Court's review of a dismissal for failure to state a claim).

As a preliminary matter, we address Mr. Horst's contention that the trial court erred in granting Mr. Gaar's motion to dismiss due to the motion's supposed "skeletal" and "conclusory" nature. This issue, as developed by Mr. Horst's briefing, involves an argument that the motion to dismiss ran afoul of the requirements of Rule 7.02 of the Tennessee Rules of Civil Procedure.[5] Under Rule 7.02:

> An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

Tenn. R. Civ. P. 7.02.

Mr. Horst appears to maintain that the motion to dismiss was fatally flawed in terms of this standard, and he notes that it is not sufficient for a party's dismissal grounds to be set forth in an accompanying memorandum of law. Although Mr. Horst is correct that "articulating a defense in a memorandum accompanying a motion does not amount to compliance" with Rule 7.02, *Mitchell v. Campbell*, 88 S.W.3d 561, 564 n.4 (Tenn. Ct. App. 2002), we note that Mr. Gaar's motion did not simply contain a generic recitation that dismissal was appropriate under Rule 12. Rather, as referenced earlier, the motion outlined the actual grounds undergirding Mr. Gaar's contention that the complaint failed to state a claim. These grounds included the contention that Mr. Horst had "failed to properly plead a breach of the contract by the third party to the contract" and, in relation to the TCPA claim, that "only one alleged statement by Defendant relates to the quality of services offered by Plaintiffs' business, and that statement is an opinion and not a fact." These grounds were then reiterated and discussed in more detail in the accompanying, contemporaneously filed supporting memorandum.

Even assuming, arguendo, that we did not regard Mr. Gaar's motion to dismiss itself to be technically sufficient for purposes of Rule 7.02, we note that the appellate courts do not always foreclose the consideration of a motion's substance in the face of a technical

---

[5] Mr. Horst also raises a like issue concerning the TPPA petition, appearing to argue that the dictates of Rule 7.02 apply to a TPPA petition and that the TPPA petition in this case failed to comply with those dictates. Our immediate analysis here concerning Rule 7.02 is solely in relation to the motion to dismiss.

Rule 7.02 violation. As this Court has explained:

> In many of these cases [where there has been noncompliance with Rule 7.02], however, the courts nevertheless considered the defenses on the merits. *See, e.g.*, *Willis*, 113 S.W.3d at 714 (noting the noncompliance with Rule 7.02 but nevertheless considering whether the plaintiff's complaint failed to state a claim); *Ralph v. Pipkin*, 183 S.W.3d 362, 367 (Tenn. Ct. App. 2005) (expressly holding that while the motion to dismiss was deficient, the court would follow the precedent set in *Willis* to nevertheless consider the motion); *Mitchell*, 88 S.W.3d at 565 (noting the noncompliance with Rule 7.02, but nevertheless considering whether the complaint failed to state a claim); *Hickman*, 78 S.W.3d at 288–91 (same); *Robinson*, 65 S.W.3d at 637 (same). *But see Finchum v. Ace, USA*, 156 S.W.3d 536, 539 (Tenn. Ct. App. 2004) (Susano, J., dissenting) (refusing to consider the motion to dismiss where it said no more than the complaint should be dismissed based upon Rule 12.02(6) of the Tennessee Rules of Civil Procedure). Additionally, this court has recently held that it is appropriate to consider facts as alleged in accompanying memorandums when no prejudice resulted from the delay in asserting the facts. *See Young ex rel. Young v. Kennedy*, 429 S.W.3d 536, 552 (Tenn. Ct. App. 2013) (holding that because no action was taken between the filing of the answer and the memorandum, the plaintiff could assert no prejudice in considering the memorandum for purposes of whether the defendant had satisfied Rule 8.03).

*Allen v. Ozment*, No. W2017-00887-COA-R3-CV, 2018 WL 6169238, at *6 (Tenn. Ct. App. Nov. 26, 2018) (internal footnote omitted).

We do not see how Mr. Horst has suffered any prejudice here, even assuming that the motion to dismiss was not sufficient on its own in alerting him to the nature of the defense interposed against him. Indeed, the record clearly reflects that Mr. Horst was ultimately well aware of the bases upon which Mr. Gaar sought dismissal of this case. He was in receipt of Mr. Gaar's motion and memorandum—and responded to both of them—well in advance of the trial court's ruling and order of dismissal. We conclude that there was no error in the trial court's decision to entertain the motion to dismiss on its merits. We thus shift our attention to its substantive ruling on the matter.

*Interference with Contract*

The first count in Mr. Horst's "Causes of Action" section of the complaint is for, as labeled, "tortious interference of a business contract." Among other things, the complaint generally alleges that a "breach of the contractual relationship between HWM/SWA and/or Horst occurred," that Mr. Gaar had induced the breach of the contract, and that Mr.

Hamm's movement of his assets caused injury. As we understand it, the complaint attempts to assert a common law cause of action, as well as a statutory cause of action under Tennessee Code Annotated section 47-50-109.[6] "Tennessee undoubtedly does recognize both a statutory and common law action for unlawful inducement of a breach of contract." *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 822 (Tenn. 1994). The elements for each are the same.[7] "In order to establish such a cause of action, a plaintiff must prove that there was a legal contract, of which the wrongdoer was aware, that the wrongdoer maliciously intended to induce a breach, and that as a proximate result of the wrongdoer's actions, **<u>a breach occurred</u>** that resulted in damages to the plaintiff." *Id.* (emphases added); *see also Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 359 (Tenn. Ct. App. 1999) (noting that the jury should be charged under section 47-50-109 as to the same elements necessary to establish liability under the common law for interference in the performance or procurement of the breach of a contract).

In this case, the trial court rejected the viability of Mr. Horst's first count by focusing on the breach element of the cause of action, noting in relevant part as follows:

> Breach of a contract is a necessary element of this claim under Tennessee law. Plaintiffs allege that Mr. Hamm's action in moving his money based on the alleged statements of the Defendant constituted a breach of that contract, but the language of the contract at issue permitted Mr. Hamm to move his money at any time for any reason.

We agree. Dismissal of the claim was proper. As noted earlier, the contract at issue provided in pertinent part as follows: "You may at any time increase or decrease your managed assets." Mr. Hamm's movement of assets did not constitute a breach, and Mr. Horst's reliance on same to support the viability of his first tortious interference claim is therefore insufficient. *See Lee v. State Volunteer Mut. Ins. Co.*, No. E2002-03127-COA-R3-CV, 2005 WL 123492, at *10 (Tenn. Ct. App. Jan. 21, 2005) (noting that Tennessee law permits recovery for tortious interference with the performance of a contract if the injured party can prove, among other things, "that the contract was actually breached").

---

[6] The first paragraph of the complaint, in the complaint's "Introduction," mentions that the complaint is one "for Tortious Interference of a Contract pursuant to T.C.A. 47-50-109," and the second paragraph mentions that it is a complaint "for the common law action of Tortious Interference with a Business Contract." As an aside, and as discussed *infra*, the statutory cause of action is also somewhat confusingly referenced in the "Intentional Interference with a Business Relationship" count.

[7] This is not to say that there is no distinction between an action under the statute and one under common law. *See, e.g.*, *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 355, 359 (Tenn. Ct. App. 1999) (noting that the statute differs as it concerns damages and stating that "[i]n the event that a plaintiff successfully asserts a cause of action under Tennessee Code Annotated section 47–50–109 as well as a punitive damages claim in the common law action for tortious interference with contract, plaintiff is required to elect between remedies").

In reaching our conclusion, we are not persuaded by the arguments Mr. Horst offers on appeal in an attempt to have this Court reverse the trial court. A portion of Mr. Horst's argument, for instance, appears to proceed from a faulty premise. Indeed, although Mr. Horst insists that the trial court effectively ruled that the contract was "impossible to be breached"—and criticizes that purported ruling—the trial court did not so rule. The trial court rejected the viability of the first cause of action not because of a determination that the contract was incapable of breach; rather, the trial court simply dismissed the claim due to what we just discussed: that the action posited as a breach—Mr. Hamm's movement of assets—did not constitute a breach given the provisions of the contract at issue.

Further, although Mr. Horst correctly notes that a party's right to recover for interference with a contract is not affected by the fact that an injured party also has a right of action in contract against the defaulting party, *see, e.g., Cambio Health Sols., LLC v. Reardon*, 213 S.W.3d 785, 789 (Tenn. 2006), he attempts to extrapolate from this principle by arguing that its corollary is that "a plaintiff's right to recover for interference with a contract is not affected by the fact that the injured party may not have a right of action in contract against the defaulting party to the contract."[8] Respectfully, we do not find merit in the suggestion embedded within the corollary divined by Mr. Horst. Again, as outlined above, breach of contract *is* an element of the cause of action.[9] The trial court was not in error in holding so or in determining that the action relied upon by Mr. Horst did not constitute a breach. We thus turn to the trial court's dismissal of the second count in Mr. Horst's "Causes of Action" section of the complaint: intentional interference with a business relationship.

*Intentional Interference with Business Relationships*

The tort of intentional interference with business relationships provides for recovery

---

[8] In connection with this argument, although Mr. Horst does not technically concede that he could not have successfully proceeded for breach of contract against Mr. Hamm, he does openly state that he "would have a lesser likelihood of success" in such a direct lawsuit.

[9] Remaining arguments offered by Mr. Horst are also unavailing in our view. At one point in his briefing, Mr. Horst even appears to suggest that the action of Mr. Gaar—who is not a party to the contract at issue—constituted the breach. As we understand it, the argument is predicated on the notion that there is a duty of good faith in the performance of contracts. Although that principle is true, *see, e.g., Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996), Mr. Horst's argument twists it in our opinion by submitting that the bad faith of a non-party to the contract constituted the contractual breach. According to Mr. Horst's briefing, his point of argument could be sustained even if this Court was "inclined to believe that [Mr. Hamm] did not breach his contract in the traditional sense." Although Mr. Horst also attempts to rely on a line of case law recognizing that "intentional interference with at-will employment by a third party, without privilege or justification, is actionable," *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994), he also candidly acknowledges that he has not found any law that is "on point for the case at bar." As it is, a breach of the contract is an element of the cause of action at issue, and Mr. Horst fails to satisfactorily explain how the action relied upon for breach, which was not a contractual breach, could sustain the claim.

when a plaintiff can demonstrate:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's *improper motive or improper means*; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (internal footnotes and citation omitted). The Tennessee Supreme Court's recognition of this tort in *Trau-Med* followed from its prior rejection of the tort in *Nelson v Martin*, 958 S.W.2d 643 (Tenn. 1997). Although in *Nelson* the Supreme Court had opined that the "policy reasons for the tort prohibiting interference with contracts[] do not support a tort designed to protect prospective contracts and relationships," *Nelson*, 958 S.W.2d at 646, the *Trau-Med* court concluded that "continued abolition of the tort . . . would be unreasonable." *Trau-Med*, 71 S.W.3d at 701. Thus, because of the decision in *Trau-Med*, prospective contractual relations gained protection from interference. In adopting the tort, the Tennessee Supreme Court noted that it was also adopting the discussion in § 766B comment c of the Restatement (Second) of Torts, which the Supreme Court quoted—and added emphasis to—as follows:

> The relations protected against intentional interference by the rule stated in this Section include any prospective contractual relations, except those leading to contracts to marry, if the potential contract would be of pecuniary value to the plaintiff. Included are interferences with the prospect of obtaining employment or employees, the opportunity of selling or buying land or chattels or services, and any other relations leading to potentially profitable contracts. Interference with the exercise by a third party of an option to renew or extend a contract with the plaintiff is also included. *Also included is interference with a continuing business or other customary relationship not amounting to a formal contract.*

*Id.* at 701 n.4.

Of relevance to our discussion and holding herein, we observe that the case law emanating from this Court admits of some uncertainty as it pertains to the viability of this tort claim in instances where, as here, there is a formal contract. *See Tennison Bros., Inc. v. Thomas*, 556 S.W.3d 697, 727 n.24 (Tenn. Ct. App. 2017) (noting the existence of "[s]ome debate" on the matter). Based on the allegations in the complaint before us, which focus on Mr. Gaar's alleged cause of a breach of contract between Mr. Hamm and Mr. Horst, the essential question to be asked is, as we see it, does this tort protect against

interference *with a contract*? As observed by this Court in *Clear Water Partners, LLC v. Benson*, a prior decision by this Court had countenanced a claim for intentional interference with a business relationship in a case where the only alleged interference was with a contractual relationship. *Clear Water Partners, LLC v. Benson*, No. E2016-00442-COA-R3-CV, 2017 WL 376391, at *6 (Tenn. Ct. App. Jan. 26, 2017) (discussing the unreported decision of *Tennison Bros., Inc. v. Thomas*, No. W2013-01835-COA-R3-CV, 2014 WL 3845122 (Tenn. Ct. App. Aug. 6, 2014)). As discussed by this Court in *Benson*, however, it did "not appear . . . that any of the defendants [in the prior unreported decision] made the argument that the tortious interference with business relationships claim was not available to the plaintiff as a result of the plaintiff's contractual relationship." *Id.* at *7 n.3. Thus, we acknowledged, this Court "may have had no reason to address this issue head on." *Id.*

By way of contrast, we noted in *Benson* the existence of federal decisions interpreting Tennessee law that had considered this tort to protect *non-contractual* relationships. *Id.* at *6. One of these decisions, we noted, had "cited *Trau-Med* and referred to comment c of the Restatement (Second) of Torts § 766B that the *Trau-Med* Court expressly adopted to explain its decision not to apply the tort to relationships that involve a formal contract." *Id.* (citing *Lick Branch Unit, LLC v. Reed*, No. 3:13-cv-203, 2014 WL 546696, at *15 (E.D. Tenn. Feb. 10, 2014)). Ultimately, this Court opined that it did not need to attempt to square the federal decisions with the prior unreported decision of this Court, explaining as follows on the subject:

> [I]n light of Clear Water's assertion that its claim is not based on the contracts it had with the Trusts, Belle Investment, and Mr. Murphy, but instead was based on future contracts and business relationships with some or all of these third parties, we need not try to reconcile the discrepancy among these cases. We believe the fact that Clear Water had contractual relationships with the same third parties with which it alleged it had business relationships and which formed the basis of its tortious interference claim is inconsequential so long as the tortious interference claim is based on future contractual and/or business relationships, not current or prior contractual relationships. Implicit in comment c of the Restatement (Second) of Torts § 766B is that a plaintiff asserting this tort may have an existing contract with a third party when the defendant engages in improper conduct that interferes with the plaintiff's future contractual relationship with that third party.

*Id.* at *7.

Our own research reveals that the general understanding of Tennessee law contained in the federal decisions referenced by our opinion in *Benson* has subsequently been entrenched through additional federal decisions, including a couple of relatively recent

- 10 -

ones.[10] *See, e.g.*, *United Biologics, LLC v. Amerigroup Tenn., Inc.*, No. 3:19-cv-180, 2024 WL 770640, at *17 (E.D. Tenn. Jan. 18, 2024) ("[A]lthough UAS cannot use a tortious-interference-with-business-relations claim to recover damages resulting from its prior contractual agreements with primary-care physicians in Tennessee, it is not foreclosed from asserting that Defendants' alleged improper conduct interfered with future contractual relationships with primary-care physicians who stopped contracting with UAS."); *BNA Assocs. LLC v. Goldman Sachs Specialty Lending Grp., L.P.*, 63 F.4th 1061, 1064 (6th Cir. 2023) (noting that "Tennessee's intentional interference with business relations tort has a confined scope," that "[i]t does not reach relationships that have been reduced to a contract," and that "[t]he gist of an IIBR claim is that the plaintiff's non-contractual business relationship with another was intentionally interfered with by a third party, the purported tortfeasor").

Although we of course are not bound by these federal court decisions on matters of state law, *Townes v. Sunbeam Oster Co.*, 50 S.W.3d 446, 452 (Tenn. Ct. App. 2001), we

---

[10] Our own engagement with the scope of the tort in the immediate wake of *Benson* remained somewhat noncommittal. As referenced earlier, in one decision issued by this Court subsequent to *Benson*, we cited to *Benson* and stated that there was "[s]ome debate" on whether the tort could be asserted in cases involving a formal contract. *See Tennison Bros., Inc.* 556 S.W.3d at 727 n.24. Adding to the uncertainty in our existing jurisprudence, however, is another decision, *Robinson v. City of Clarksville*, 673 S.W.3d 556 (Tenn. Ct. App. 2023). Specifically at issue in *Robinson* was the application of Governmental Tort Liability Act immunity under Tennessee Code Annotated section 29-20-205 to an asserted claim for intentional interference with a business relationship. In pertinent part, under Tennessee Code Annotated section 29-20-205, "[i]mmunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of: . . . *interference with contract rights*." Tenn. Code Ann. § 29-20-205 (emphasis added). Whereas the trial court had "held that interference with business relationships is an 'extension' of a claim for interference with contract rights" and ruled that the governmental entity at issue in the case was immune, we concluded that the trial court "erred in conflating the torts of interference with contract rights and interference with business relations under Tenn. Code Ann. § 29-20-205(2)." *Robinson*, 673 S.W.3d at 572-73, 574. In the course of addressing this question, though, our analysis contained certain discussion that was suggestive of the fact that the scope of the tort of intentional interference with business relationships is broader than understood by the federal decisions referenced in *Benson*. In relevant part, we discussed as follows regarding the tort of intentional interference with business relationships and an action for interference with contract rights:

> Although they are similar in some ways, the two causes of action are separate and distinct, with the chief distinction being that a cause of action for interference with business relationship *does not require* an existing contract. We do not find that the claim of interference with business relationship *necessarily* "arises out of" a claim for interference with contract rights because no contract is required in order to pursue the claim of interference with business relationship.

*Id.* at 574 (emphasis added). For the reasons discussed herein, however, we conclude that the tort of intentional interference with business relationships does not itself protect against interference with an existing or past contract.

- 11 -

are of the opinion that their understanding of the scope of the tort of intentional interference with business relationships is a sound one. As referenced earlier, when the *Trau-Med* court adopted the tort, it did so to overrule *Nelson*, a decision in which, again, the Tennessee Supreme Court had opined that the "policy reasons for the tort prohibiting interference with contracts[] do not support a tort designed to protect prospective contracts and relationships." *Nelson*, 958 S.W.2d at 646. Of course, the Tennessee Supreme Court's adoption of the tort of intentional interference with business relationships in *Trau-Med* altered what was protected from interference, something that the *Traud-Med* court's reliance on § 766B comment c of the Restatement (Second) of Torts also specifically signals. Indeed, *prospective* contractual relations gained protection by the *Traud-Med* court's adoption of the tort. *Trau-Med*, 71 S.W.3d at 701 n.4. In our view, though, the adoption of the tort to protect prospective contractual relations did not also signify that the *adopted tort* somehow also protected existing or prior contractual relationships. Particularly instructive to our understanding of this issue is one of the federal decisions that we referenced in *Benson*, namely the following discussion offered in relation to this very issue:

> Defendants note the Tennessee Supreme Court indicated this tort does not apply to relationships formalized in a contract. Plaintiffs argue, on the other hand, that the tort is not limited to non-contractual relationships but merely includes such relationships.
>
> The Court agrees with Defendants. The Tennessee Supreme Court adopted comment c of Section 766B of the Restatement (Second) of Torts, which states that the tort applies to "relationship[s] not amounting to a formal contract." As comment a clarifies, "[t]his Section is concerned only with intentional interference with prospective contractual relations, *not yet reduced to contract.* The rule for the actor's intentional interference with a third person's performance of his existing contract with the plaintiff is stated in § 766." Restatement (Second) of Torts § 766B cmt. a (emphasis added); *see also Thompson v. Hayes,* 748 F.Supp.2d 824, 833 (E.D.Tenn.2010) (quoting § 766B cmt. a and concluding "[t]he cases cited by plaintiffs in support of their argument that the tort may apply where the existing business relationship is contractual do not sufficiently demonstrate such is the case"). Moreover, the Sixth Circuit has explicitly recognized that this tort is limited to non-contractual relationships.

*Lick Branch Unit, LLC v. Reed*, No. 3:13-cv-203, 2014 WL 546696, at *14–15 (E.D. Tenn. Feb. 10, 2014) (certain citations omitted).

Because we conclude that the tort of intentional interference with business relationships does not protect against interference with an existing or past contract, the trial

court's dismissal of this claim was not in error.[11]  Indeed, Mr. Horst's pleaded count clearly takes issue with the alleged "breach of the contract between Hamm and HWM/SWA/Horst" caused by Mr. Gaar.[12]  Given our conclusion that dismissal of this claim was not in error, we turn our attention to the trial court's dismissal of Mr. Horst's TCPA claim.

*TCPA*

As this Court has previously noted,

> [t]he TCPA "creates a cause of action for '[a]ny person who suffers an ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice.'" *Davis v. McGuigan*, 325 S.W.3d 149, 161 (Tenn. 2010) (quoting Tenn. Code Ann. § 47–18–109(a)(1) (2001)).  Although the TCPA authorizes trial courts to award treble damages for "willful or knowing" violations, Tenn. Code Ann. § 47–18–109(a)(3), no recovery is available unless a plaintiff first proves (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an ascertainable loss.

*Jones v. BAC Home Loans Servicing, LP*, No. W2016-00717-COA-R3-CV, 2017 WL 2972218, at *8 (Tenn. Ct. App. July 12, 2017).  Here, Mr. Horst's claim under the TCPA was based on alleged disparagement and implicates the statutory provision codified at Tennessee Code Annotated section 47-18-104(b)(8), a provision which declares the following as an unfair or deceptive act or practice: "Disparaging the goods, services or business of another by false or misleading representations of fact." Tenn. Code Ann. § 47-18-104(b)(8).  When the trial court dismissed the claim, it specifically focused on the viability of the alleged disparagement, holding, as noted before, that "the statements allegedly made by the Defendant . . . are opinions and statements of things that were to be made in the future" and "are not, therefore, actionable."

---

[11] We pretermit analysis of the specific reasoning the trial court offered to support its dismissal of the claim. As we stated earlier in the Opinion, we may affirm a trial court's decision to dismiss a claim, even if on different grounds than the trial court specifically relied upon, if we determine that the court reached the correct result.  *See, e.g.*, *Paczko*, 2012 WL 4450896, at *3 n.3 (stating this principle in connection with the Court's review of a dismissal for failure to state a claim).

[12] That Mr. Horst's focus is on an alleged contractual breach is underscored by the fact that Mr. Horst's pleaded count for this tort confusingly references the statutory cause of action available under Tennessee Code Annotated section 47-50-109, which is a "codification of the common law rule" for inducement of a breach of contract.  *Buddy Lee Attractions, Inc.*, 13 S.W.3d at 355.  Mr. Horst's reply brief also references the statutory cause of action under section 47-50-109 in connection with his advocacy pertaining to the supposed viability of a claim for tortious interference with a business relationship.

- 13 -

As section 47-18-104(b)(8) makes clear, the actionable disparagement under that section must pertain to the "goods, services or business of another." *Id.*; *see also Quality Auto Parts Co.*, 876 S.W.2d at 822 ("Assuming for the sake of argument that the defendants made the false statements alleged in the complaint, the statements did not criticize or disparage the quality of Kimbrow's services as a parts manager, but reflected only upon his integrity."). Further, the type of disparagement actionable under the statute must be "by false or misleading representations of fact." Tenn. Code Ann. § 47-18-104(b)(8). Opinions, therefore, are not actionable. *See River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc.*, 173 S.W.3d 43, 61 (Tenn. Ct. App. 2002) ("Tennessee Code Annotated § 47–18–104(b) prohibits 'disparaging the goods, services or business of another by false or misleading representations of fact.' The trial court held that the comments made in the letters were opinions and, thus, did not constitute 'false or misleading representations of fact.' We agree, and affirm the trial court's rejection of this claim.").

From our review of the complaint, we are of the opinion that there are no statements pled that satisfy the standards of section 47-18-104(b)(8), that is, that (1) disparage the "goods, services or business of another" *and* (2) do so "by false or misleading representations of fact." Tenn. Code Ann. § 47-18-104(b)(8). In disputing the non-viability of his TCPA claim on appeal, Mr. Horst focuses primarily on paragraph 31 of the complaint, which alleges that Mr. Gaar stated to Mr. Hamm that "Horst was leaving Memphis and moving back to Las Vegas permanently, therefore jeopardizing the service and expertise that Hamm was used to getting from Horst/HWM/SWA locally." At oral argument, for instance, counsel for Mr. Horst alluded to paragraph 31 as "the statement" relied upon in support of the asserted TCPA claim and argued that it was "not an opinion." We agree with the trial court, however, that the asserted allegations pertaining to Mr. Horst's business are not actionable under the TCPA. In our opinion, that Mr. Horst's service was allegedly being jeopardized involves a conjectural opinion as to how a move would affect service, and is not itself an actionable "false or misleading representation[] of fact." *Id.*[13] We affirm the trial court's dismissal of this claim.

---

[13] As noted herein, when the trial court dismissed the TCPA claim, it specifically focused on the viability of the alleged disparagement, holding, as noted before, that "the statements allegedly made by the Defendant . . . are opinions and statements of things that were to be made in the future" and "are not, therefore, actionable." Even if one component of the allegation in paragraph 31—"Horst was leaving Memphis and moving back to Las Vegas"—does not itself, in isolation, qualify as a statement meeting the specific description that informed the trial court's dismissal as to the "claim for disparagement," it is also clear to this Court that it is not legally actionable for a claim under section 47-18-104(b)(8) inasmuch as it does not involve disparagement of the "goods, services or business of another." Thus, we are not persuaded by Mr. Horst's insistence that the move from Memphis was itself "fictitious." As it is, we note again that we are of the opinion that there are no statements pled that satisfy the standards of section 47-18-104(b)(8), that is, that (1) disparage the "goods, services or business of another" *and* (2) do so "by false or misleading representations of fact." Tenn. Code Ann. § 47-18-104(b)(8). There is, therefore, no reason to disturb the trial court's dismissal of this claim.

*Motion to Alter or Amend*

Mr. Horst also challenges the trial court's failure to grant him relief under Rule 59 of the Tennessee Rules of Civil Procedure pertaining to the dismissal of his complaint. We review the denial of a Rule 59 motion for an abuse of discretion. *Robinson v. Currey*, 153 S.W.3d 32, 38 (Tenn. Ct. App. 2004). Such a motion

> should only be granted "when controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice" and "should not be used to raise or present new, previously untried or unasserted theories or legal arguments." *In re M.L.D.,* 182 S.W.3d at 895.

*In re Lawton*, 384 S.W.3d 754, 764 (Tenn. Ct. App. 2012). Here, Mr. Horst's contention is simply that there were clear errors of law incident to the trial court's dismissal of the complaint. In essence, he argues that for the same reasons the trial court's dismissal of the complaint should be overturned, so too should the denial of his motion to alter or amend.[14] For the reasons already discussed, we conclude that dismissal of the complaint was appropriate. Thus, we conclude that Mr. Horst's raised issue under Rule 59 does not merit any relief. It was proper for the trial court to dismiss the complaint.

*TPPA Petition*

Also at issue in this appeal is a host of issues concerning the trial court's decision to grant Mr. Gaar's petition under the TPPA. We do not ultimately express an opinion on these issues, however, because we are of the view that the hearing of Mr. Gaar's TPPA petition became a nonjusticiable, moot issue given the trial court's dismissal of Mr. Horst's complaint for failure to state a claim and denial of a motion to alter or amend in relation to same.

"The role of our courts is limited to deciding issues that qualify as justiciable, meaning issues that place some real interest in dispute . . . ." *City of Memphis v. Hargett*, 414 S.W.3d 88, 96 (Tenn. 2013). "[J]usticiability is a threshold matter," *Northshore Corridor Ass'n v. Knox Cnty.*, 633 S.W.3d 561, 571 (Tenn. Ct. App. 2021), and justiciability doctrines such as mootness assist the courts in determining whether a matter presents a legal controversy. *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 203 (Tenn. 2009). "To be justiciable, an issue must be cognizable not only at the inception of the litigation but also throughout its pendency." *Hargett*, 414 S.W.3d at 96. An issue will become moot "if an event occurring after the commencement

---

[14] Indeed, his offered argument on this issue states in relevant part as follows: "The preceding and succeeding sections of this brief are hereby incorporated by reference in their entirety, as they discuss the specific errors of law."

- 15 -

of the case extinguishes the legal controversy attached to the issue." *Id.* Indeed, a matter may become moot when it "has lost its justiciability either by court decision, acts of the parties, or some other reason occurring after commencement of the case." *Norma Faye Pyles Lynch Family Purpose LLC*, 301 S.W.3d at 204.

Here, our determination that the TPPA petition became moot is a result of (a) the procedural development of the underlying case in the trial court and (b) the nature of what a TPPA petition represents. Regarding the procedural development of Mr. Horst's action, we note that, although Mr. Gaar filed for relief under Rule 12 and under the TPPA, he did not pursue relief under the TPPA by way of a hearing while claims were actually pending against him. Rather, as outlined earlier in this Opinion, there was not a hearing on the TPPA petition until *after* the trial court had already dismissed Mr. Horst's action and denied a motion to alter or amend in relation to the dismissal order. Inasmuch as a TPPA petition is akin to a defense to legal claims, *see infra*, it is our opinion that the absence of pending claims against Mr. Gaar mooted the petition. Because our conclusion on this subject stems in large part from discussion contained within the Tennessee Supreme Court's recent decision in *Flade v. City of Shelbyville*, 699 S.W.3d 272 (Tenn. 2024), we turn our attention to it now.

In *Flade*, the Tennessee Supreme Court addressed the issue of whether filed, but not heard, TPPA petitions should have been adjudicated by a trial court following a voluntary nonsuit by the plaintiff. *Id.* at 276-77, 281. The Tennessee Supreme Court ultimately concluded that "the trial court correctly declined to adjudicate the pending TPPA petitions . . . once [the plaintiff] voluntarily nonsuited his complaint." *Id.* at 302. Although the appeal in *Flade* squarely involved the "intersection of the rule governing the voluntary dismissal of a civil action, Tenn. R. Civ. P. 41.01, and the statutory scheme of the [TPPA]," *id.* at 276, the Tennessee Supreme Court's opinion contains extensive discussion on the nature of what a TPPA petition represents. In our view, that discussion signals that, in a case such as the present one, an unheard TPPA petition[15] is mooted if a defendant has already achieved a dismissal of a plaintiff's action by way of a motion to dismiss for failure to state a claim.

The TPPA, which was enacted in 2019, is "Tennessee's version of an anti-SLAPP statute." *Id.* at 283 (quoting *Charles v. McQueen*, 693 S.W.3d 262, 267 (Tenn. 2024)). "Like many other anti-SLAPP statutes, the TPPA establishes a procedure for swift dismissal of non-meritorious claims." *Id.* (quoting *Charles*, 693 S.W.3d at 267). Although,

---

[15] In this case, we are not presented with a factual pattern where a Rule 12 dismissal motion and TPPA petition were prosecuted concurrently in an attempt to obtain dismissal. As noted herein, this case instead involves the following basic chronology that all occurred *before* the trial court ever held a hearing on the TPPA petition: (1) a hearing on the Rule 12 motion, (2) entry of an order granting dismissal under Rule 12, and (3) entry of an order denying a motion to alter or amend. Our discussion herein is of course limited to the factual pattern before us.

- 16 -

as *Flade* acknowledged, "the TPPA states that it 'is intended to provide an additional substantive remedy to protect the constitutional rights of parties and to supplement any remedies which are otherwise available to those parties under common law, statutory law, or constitutional law or under the Tennessee Rules of Civil Procedure," *id.* at 284 (quoting Tenn. Code Ann. § 20-17-109), the fact that a party may file a Rule 12 motion to dismiss and a TPPA petition, *see id.* at 289 n.20, does not in our view mean that a party has a right to have an *unheard* TPPA petition adjudicated if the party has already obtained dismissal by way of Rule 12.

As an initial matter, *Flade* observed as follows concerning the mere filing of a TPPA petition: "Nowhere does the text of the TPPA require that a petition, once filed, must be adjudicated under any and all circumstances." *Id.* at 295. The "TPPA makes clear that it does not create a private right of action." *Id.* (quoting Tenn. Code Ann. § 20-17-108(6)). Properly understood, it "provides a dismissal procedure." *Id.* (quoting this Court's decision in *Flade v. City of Shelbyville*, No. M2022-00553-COA-R3-CV, 2023 WL 2200729, at *18 (Tenn. Ct. App. Feb. 24, 2023)). Indeed, *Flade* noted that "a TPPA petition is unlike a cause of action and more *akin to a method of mounting a defense*." *Id.* (emphasis added). This characterization of a TPPA petition as a method to mount a defense is highly notable in our view. After all, a TPPA petition's function as a procedural dismissal mechanism inevitably presupposes that there *is* something to dismiss at the time a petition is heard and submitted to the court for determination.

This focus on the TPPA petition's function as a *defense* was reinforced in the *Flade* court's specific discussion pertaining to whether TPPA petitions qualify as counterclaims for purposes of Rule 41.01 of the Tennessee Rules of Civil Procedure.[16] Of note, *Flade* discussed as follows when engaging with that issue:

> [A] counterclaim must be a claim for "affirmative relief." 952 S.W.2d at 416; see also Lawrence A. Pivnick, Tennessee Circuit Court Practice § 13:1, at 839 (2009). However, in determining whether a TPPA petition constitutes a counterclaim for purposes of Rule 41.01(1), we note that a counterclaim has been described further as a "part of the answer served by a defendant asserting one or more causes of action against a plaintiff." Pivnick, supra, § 13:1, at 839. It is "distinguished from a defense because *it seeks affirmative relief based on a cause of action*, while a defense merely seeks to defeat the opponent's cause of action by denial or avoidance." Id. (emphasis added); see generally 80 C.J.S. Set-off and Counterclaim § 2 (West 2024) ("A counterclaim is a cause of action existing in favor of the defendant against

---

[16] Rule 41.01 provides in pertinent part as follows concerning the "counterclaim exception" to a voluntary dismissal: "If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of plaintiff's motion to dismiss, the defendant may elect to proceed on such counterclaim in the capacity of a plaintiff." Tenn. R. Civ. P. 41.01(1).

the plaintiff and on which the defendant might have secured affirmative relief had the defendant sued the plaintiff in a separate action."). As a result, a counterclaim is itself subject to defenses such as a motion to dismiss for failure to state a claim. <u>See</u> 3 Nancy Fraas MacLean, <u>Tennessee Practice</u> 481, cmt. 13:1 (4th ed. 2006).

Considering the foregoing principles, we conclude that a TPPA petition does not constitute a counterclaim for purposes of Rule 41.01(1). **The TPPA itself makes clear that it does not create a private right of action.** Tenn. Code Ann. § 20-17-108(6). **We acknowledge that the TPPA states that it is a "substantive remedy."** Tenn. Code Ann. § 20-17-109. **Regardless, the tenor of the TPPA is one of determining whether the petitioning party has a "valid *defense* to the claims in the legal action" through a specialized expedited procedure.** Tenn. Code Ann. § 20-17-105(c) (emphasis added). Through that specialized procedure, a petitioner prevails if the responding party fails to establish a prima facie case for each essential element of the claim in the legal action. Tenn. Code Ann. § 20-17-105(b). In other words, **prevailing on a TPPA petition is akin to a defense in that success results from the plaintiff's failure to carry their burden under the statute.**

*Id.* at 299 (emphasis in bold added).

*Flade* went on to note that a TPPA petition operates as a "mere denial[] of the plaintiff's cause of action," *id.* (quoting *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 416 (Tenn. 1997)), and further equated a TPPA petition as a "specialized expedited defense mechanism against a qualifying legal action." *Id.* at 300. It does "not exist of [its] own accord, but rather only as a defensive response to the [p]laintiff's complaint." *Id.* at 301.

Keeping these principles in mind, and returning back to the facts here, is the adjudication of an *unheard* TPPA petition justiciable when the plaintiff's complaint has already been dismissed for failure to state a claim and the trial court has already denied a motion to alter or amend regarding the dismissal order? In our view, the answer to this question is no. Indeed, we are of the opinion that a TPPA petition is rendered moot under such circumstances. Accordingly, Mr. Gaar's TPPA petition lost its justiciability. Given our conclusion on this issue, we vacate the order of the trial court that granted Mr. Gaar's TPPA petition and remand for the entry of an order dismissing the TPPA petition as moot.

*Attorney's Fees*

Because we conclude that the trial court's order granting the TPPA petition should be vacated, so too should its award of $11,849.84 pursuant to Tennessee Code Annotated section 20-17-107. As for the award made pursuant to Tennessee Code Annotated section

- 18 -

20-12-119, Mr. Horst simply argues as follows on appeal: "[S]ince the granting of [the] dispositive motion[] [under Rule 12] was in error so is the granting of attorney fees and the fee grant should likewise be reversed." No other argument was made by Mr. Horst, and as discussed herein, we have affirmed the trial court's dismissal of the complaint. Although the *argued* predicate for a reversal of the trial court's award was not established, a point of instruction in this case is appropriate. Although section 20-12-119 does in fact provide for an award of costs and reasonable and necessary attorney's fees pursuant to its terms "where a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief may be granted," Tenn. Code Ann. § 20-12-119(c)(1), the statute is clear that "*[a]n award of costs pursuant to this subsection (c) shall be made only after all appeals of the issue of the granting of the motion to dismiss have been exhausted and if the final outcome is the granting of the motion to dismiss*." Tenn. Code Ann. § 20-12-119(c)(3) (emphasis added). As we have noted before, "[d]ue to the mandatory language of subsection (c)(3), it is not within the trial court's discretion to proceed with awarding a party his or her attorney's fees until appeal of the underlying dismissal is resolved, or the time for appeal has passed." *Irvin v. Green Wise Homes, LLC*, No. M2019-02232-COA-R3-CV, 2021 WL 709782, at \*5 (Tenn. Ct. App. Feb. 24, 2021). Here, the trial court's action in making an award[17] under section 20-12-119 before resolution of the appellate process clearly ran afoul of the statutory directive. Yet, given that this procedural issue was not challenged by Mr. Horst, and further, given that we have upheld the Rule 12 dismissal, we hold, as we have on a prior occasion, that "the trial court's act of prematurely awarding attorney's fees before exhaustion of the right to appeal was harmless error." *Schodowski v. Tellico Vill. Prop. Owners Ass'n, Inc.*, No. E2015-01145-COA-R3-CV, 2016 WL 1627895, at \*9 n.4. (Tenn. Ct. App. Apr. 22, 2016).

## CONCLUSION

In light of the foregoing discussion, we affirm the trial court's dismissal under Rule 12, vacate its dismissal—and award of costs and attorney's fees—under the Tennessee Public Participation Act, and affirm the award of costs and attorney's fees arising from the

---

[17] When we broached this procedural question at the oral argument of this matter, counsel for Mr. Gaar somewhat confusingly argued that the trial court's award of attorney's fees in relation to section 20-12-119 was not a judgment, was not ripe for an appeal, and did not actually award any money to any party. As to counsel's representations, in particular counsel's statement that money was not awarded to any party, we note that the plain language of the trial court's order states, without equivocation, that: "The Defendant is, therefore, awarded $10,000.00 pursuant to Tenn. Code Ann. § 20-12-119." Whereas Mr. Gaar's counsel was, based on her oral representations in response to questioning from this Court, pointing to the necessity of obtaining a judgment concerning attorney's fees pursuant to the statute on remand (based on the supposed understanding that no award had been made), this stood in stark contrast to what had been offered in Mr. Gaar's briefing. Indeed, Mr. Gaar argued in relevant part in his briefing that "the Circuit Court's decision awarding Appellee's attorney's fees should be affirmed" and asked that the trial court's ruling be affirmed "in all respects." As we have noted, part of the trial court's ruling was an award of $10,000.00 in attorney's fees pursuant to section 20-12-119.

- 19 -

trial court's Rule 12 dismissal.

                                             s/ Arnold B. Goldin
                                        ARNOLD B. GOLDIN, JUDGE